(35 South. 593.)

No. 15,002.

## STATE v. JACKSON.

(Dec. 14, 1903.)

HOMICIDE—EVIDENCE—OBJECTIONS — DETENTION OF WITNESSES—TAKING TESTIMONY.

1. On the trial of the defendant the testimony of two witnesses, John and Frances Davis, taken by the deputy clerk of the district court, by order of the district judge, under Act No. 124, p. 179, of 1896, was offered, but objected to on the sweeping objection that "the state had not laid the proper foundation for doing so, and it was not shown that Act No. 124, p. 179, of 1896, was complied with because no judicial accusation was ever made against the accused prior to the day on which the testimony was taken, and that all orders to take testimony without an accusation being made against the accused was absolutely null."

The homicide was committed on the night of October 2d. About four hours afterwards he was arrested and taken to the parish jail by a sheriff, who did so without affidavit or warrant, on information received. The deputy sheriff told him he was arrested on a charge of having killed one Robertson. On the 3d of October, a coroner's jury having found that Robertson had come to his death as the result of gunshot wounds at the hands of Will Jackson, the coroner ordered verbally the deputy sheriff to commit Will Jackson and the witnesses John and Frances Davis to jail. The latter were committed to jail. Jackson was already in jail.

On the 7th of October the witnesses applied to the district judge to have their testimony taken under Act No. 124, p. 179, of 1896, reciting that they were in jail detained under order of the coroner as witnesses to testify in the case of the state against Will Jackson, charged with the murder of John Robertson. The judge on the same day ordered the testimony to be taken, and it was taken on the 11th of October contradictorily with Jackson, after service on him of the application and order. No application was made to the judge to modify his order on any ground. The coroner's inquest was not marked "Filed" at the date of this order.

The district judge by virtue of his office was a committing magistrate.

*Held,* Act No. 124, p. 179, of 1896, is a remedial statute, and should be interpreted liberally in aid of its object. To construe the words "prosecution pending" as meaning that the witnesses were to be detained in prison until after an indictment should be found would be to defeat its purposes. The words "prosecution pending" evidently meant "accusation pending."

2. The finding of the coroner's inquest was a sufficient basis as an accusation for the judge of the district court to have ordered the testimony to have been taken. There was no necessity for it to be marked "Filed" before the judge could take cognizance of it. No reversible error was made in allowing the testimony to be taken, and no resulting injury is shown.

Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Denis Miller, Judge.

Will Jackson was convicted of murder, and appeals. Affirmed.

Morris Reese Stewart, for appellant. Walter Guion, Atty. Gen., and Joseph Moore, Dist. Atty. (Lewis Guion, of counsel), for the State.

NICHOLLS, C. J. The defendant was indicted on the 4th of February, 1903, by a grand jury for Calcasieu parish, for the murder of one John Robertson, on October 2, 1902.

The case was tried on the 24th of August, 1903, the trial resulting in a verdict of guilty without capital punishment. After an unsuccessful attempt to obtain a new trial, he was sentenced to be confined at hard labor in the state penitentiary for the period of his natural life, and subject to legal commutation.

From this verdict and judgment he has appealed.

On the trial of the case the state offered in evidence the written testimony of John Davis, and of Frances Davis, taken before the

deputy clerk of the district court for the parish of Calcasieu, on the 11th of October, 1902, to the introduction of which evidence defendant objected "because the state had not laid the proper foundation for doing so, and it was not shown that Act No. 124, p. 179, of 1896, authorizing testimony of that kind to be taken, was complied with, and because no judicial accusation was ever made against the accused prior to the day on which the testimony was taken, and that all orders to take testimony without an accusation being made against the accused was absolutely null; that the preamble to the testimony sought to be introduced showed that the attorney for defendant objected to the taking of said testimony at the time." This objection was overruled, and the evidence was admitted, and defendant reserved bills of exception to the ruling.

At the foot of the bill of exceptions taken by defendant to the introduction of the testimony of John Davis the judge states that the "objection was overruled because Act No. 124, p. 179, of 1896, was complied with. The witness John Davis was in prison in default of giving bond for his appearance to testify in the prosecution against the accused, Will Jackson. He made the proper application under said act for the taking of the testimony. The judge gave the order usual in such cases. This application and order were served on the accused, Will Jackson, at least two entire days before the taking of the testimony. The application specifically recites that Will Jackson is charged with the crime of murder. In addition, Deputy Sheriff Ellender, when he made the arrest, informed Will Jackson that he was arrested for the killing of John Robertson, and the coroner's inquest also accused Will Jackson of having killed John Robertson. The act of 1896 does not require, as a prerequisite for the taking of testimony, that a formal charge should have been preferred before the order for the taking of the testimony is given. That he, Will Jackson, was at the time an accused person is unquestioned. He was in jail, detained for the murder of John Robertson, and of the accusation he had been directly informed by at least the deputy sheriff, and the service upon him of the copy of the application and order for the taking of the testi-

mony. At the time of the trial and long prior thereto witness John Davis had left the parish, and returned to his old home, Gulfport, Miss., and therefore could not be reached by subpœna or otherwise."

Evidence was taken upon this objection, and it was made part of the bills of exception. The application referred to as having been made by John Davis and Frances Davis to have their testimony taken was admitted in evidence, and was as follows:

"State of Louisiana vs. Will Jackson. Parish of Calcasieu, State of Louisiana, 15th Judicial Dist. Court. To the Hon. Judge of the Aforesaid Court: The petition of John Davis, Frances Davis, Allen Wilson, and Sarah Evans, of your said parish, with respect represent that they are imprisoned in the jail of said parish in default of giving bond for their appearance at the trial of Will Jackson, accused in the above case, charged with the crime of murder, being held as witnesses on behalf of the state; that they are poor laborers, without any means, unable to give the bond required by law, and are guilty of no crime and have violated no statute of the said state; that they are entitled to be enlarged and to have their liberty by having their testimony taken in writing in said prosecution contradictorily with the accused party, who is also in jail, in order that the same may be preserved in case of their death, and that in accordance with Act No. 124 of the General Assembly of the state of Louisiana, approved July 9, 1896, an order should issue at once to take their testimony in said case, due notice having been given to the district attorney of the time and place of taking said testimony, and also due notice to be given to the accused as the law directs. .

"Wherefore they pray that an order issue from your court ordering the said testimony to be reduced to writing in the aforesaid case, and fixing the time for taking said testimony, and that an order issue to said district attorney and said accused, and that thereupon your petitioners be released from custody, as the law directs.

"They pray for all costs, necessary orders, and for full general and equitable relief.

       "[Signed] D. B. Gorham, Atty."

At the foot of this application is found the following order:

"Let the clerk or any of his deputies take the testimony of said witnesses October 11, 1902.

"[Signed] E. D. Miller, Judge.
"10/7/1902."

Attached thereto is the following return.

"A certified copy of the within order was served on the within named Will Jackson by handing same to him in person in the parish jail in the city of Lake Charles, La., on the 8th day of October, 1902, at 10 o'clock a. m.

"[Signed] D. C. Lyons, Deputy Sheriff.
"Filed Oct. 8, 1902.

"[Signed] A. S. Gossett, Dy. Clerk."

An inquest made by T. H. Watkins, coroner for the parish of Calcasieu, on the 3d of October, 1902, was introduced in evidence. As shown by the signature of A. S. Gossett, deputy clerk, it was filed in the district court on October 11, 1903. It recited that "upon view of John Robertson, lying dead, the jurors having been sworn to inquire on behalf of the state when and by what means said Robertson came to his death, upon their oath did say that he came to his death as result of gunshot wounds at the hand of Will Jackson."

On the trial, an affidavit sworn to and subscribed before John L. Wasey, justice of the peace for Calcasieu parish, by C. M. Richard, on the 11th day of October, 1902, was introduced in evidence. In this affidavit Richard deposed from information received that on or about the 1st day of October, in the parish and state aforesaid (parish of Calcasieu, state of Louisiana), one Will Jackson did willfully, maliciously, and feloniously and of malice aforethought kill and murder one John Robertson, contrary to the form of the statutes of the state of Louisiana in such cases made and provided, and against the peace and dignity of the same; wherefore deponent prayed that "the said Will Jackson be apprehended and held to answer to this complaint, and further dealt with relative to the same according to law." This affidavit bore no mark of having been filed in the district court at the time.

On the 8th of August, 1903, a subpoena issued from the district court for the parish of Calcasieu to John Davis, commanding him to appear and testify in the case of State v. Will Jackson on the 24th of August, 1903, which was the day for which the case was fixed for trial.

At the foot of this subpoena, signed B. H. Hampton, deputy sheriff, are the words, "The parties in Miss."—nothing more.

In support of his objections to the introduction of the testimony of John Davis and Frances Davis, defendant placed upon the stand M. R. Stewart, who testified that he was the attorney for the defendant on the day that that testimony was taken; that prior to that date he had made diligent search for a warrant or affidavit, and could find no complaint; that on that morning about 9 or 10 o'clock he called on the district attorney, and they made a search for the affidavit or warrant, and they were notified by C. M. Richard, deputy sheriff, that none had been made; the district attorney went before Mr. Wasey, and carried (he thought) Mr. Richard with him, and the affidavit was made; immediately the case was taken up; he objected to the taking of the testimony on that day; he was not ready to go to trial or take the testimony, and had no legal notice of two days, according to the act; "the accused was held before the deputy clerk, and the testimony proceeded with, and we reserved our objections, and the testimony was taken." On cross-examination this witness stated that his client and also the witness were in jail. He supposed his client had been served with a copy of this application made by the witnesses to have their testimony reduced to writing, and had the legal delay provided by law, but he had not seen it.

Being handed the verdict of the coroner's jury, he said he could not say that he had not seen it; he may have seen it; it was very probable that he had found that; he could not swear positively that he had or had not seen it.

The district attorney then offered in evidence on behalf of the state the application made by John Davis and others to the court and the sheriff's return to show that proper service was made upon the accused, and that the legal delays had expired. He placed C. M. Richard, chief deputy sheriff for the parish of Calcasieu, on the stand, who testified that he remembered that the accused was incarcerated in the parish jail, and that

he was detained in the jail on the charge of murder against him. He did not know whether or not a commitment was made at the time he was incarcerated in jail or some little time afterwards. He was not positive as to that, but if it was not made before he was put in jail it was made soon afterwards, because he made it a rule not to detain any man in jail without having a commitment to hold him. He had no recollection whatever of making any affidavit on the morning of the taking of the testimony. He was sure he had not made any. There might have been one made, but he did not make it. He would not swear positively, but his recollection was that the affidavit was not made before he (accused) was put in jail. It was made shortly afterwards. As a rule he kept these commitments until after the grand jury finds a bill, and he then destroyed them. He might have the commitment, but he did not know. He had not destroyed any for a good while. He had quite a number, which he intended to destroy, but had not had time to do so. He felt quite positive that the charge, if not made before accused was put in jail, was made shortly after, as he made it an invariable rule not to keep any one in jail without a commitment for him.

He sometimes put men in jail at night without it, but it was always made the next morning. The parties John Davis, Frances Davis, Allen Wilson, and Sarah Evans were held in jail as witnesses in the case of the State v. Will Jackson in default of furnishing bond. They were transient negroes, and committed to jail by the coroner. Accused was put in jail immediately after the homicide—the following day, he thought; so, also, were the witnesses. Accused had been constantly in jail ever since on this charge. That was the only charge pending against him in the parish.

On cross-examination witness said he had no recollection of having, on the morning the testimony was taken, made a search for an affidavit. He did not remember having gone before Judge Wasey that morning and made an affidavit. If he had done so, he did not recollect it. Witness left the stand to make a search for an affidavit, and, returning, said witness was asked whether he had found a commitment, to which he replied that he had found an entry in the register of pris-oners that accused was put in jail on the 2d of October, and another entry in the same book that he was committed before J. L. Wasey, justice of the peace. The entry showed that he was put in jail on the 2d of October, 1902, and committed before John L. Wasey, magistrate, but witness could find no commitment. He supposed he had destroyed it, as generally he destroyed the commitments after the grand jury had found a bill. Being shown the affidavit made by him before Wasey, he said he recognized it as his affidavit, and the same was filed in evidence.

The coroner for the parish was placed upon the stand for the state. He testified to having held an inquest over the body of John Robertson, and having instructed the deputy sheriff in charge to take Jackson and the witnesses to jail. He also testified that the defendant was held as being the party accused of the murder of John Robertson. Ellender, a deputy sheriff for the parish of Calcasieu, placed upon the stand by the state, testified that he, being then deputy sheriff, had arrested the accused on a charge of murder. He had not made an affidavit against him at the time and before he made the arrest, he not having the time. When he arrested the accused he took him to Lake Charles, and put him in jail, after daylight. It was nearly daylight of the morning of the homicide when he arrested him. He did not think the arrest was made the same day that the coroner's inquest was made. He was arrested the night of the killing, about four hours after. He told accused when arresting him what he was charged with. When witness said "what he was charged with" he did not mean that there was any charge made against him by any officer; it was just what somebody told witness; that accused was the man who killed John Robertson, and he went and arrested him on that. There was not to his knowledge any charge made before a justice of the peace or any officer until the grand jury met. Witness told accused he was arresting him on the charge of having killed John Robertson. He protested his innocence.

The district attorney offered in evidence the subpœnas to John Davis and Frances Davis, and the returns made thereupon, and placed Ed Farlow upon the stand. He testified that

John Davis was no longer, so far as he knew, at Westlake (where the homicide took place); he was no longer there; that the state would find him about four and a half miles north east of Gulfport, in the state of Mississippi; that was his home ever since he had known him, and he had known him since June.

There are three bills of exception in the record. The first has already been referred to. The second was to the ruling of the court in permitting C. M. Richard to testify to the general rule of the sheriff's office in making complaints. The judge, in his addendum to the bill, stated that, even if his ruling was erroneous, defendant suffered no injury thereby; that after the ruling the affidavit referred to by C. M. Richard, made the morning of the day on which the testimony of the witnesses detained in jail was taken, was produced in court and offered in evidence. The affidavit shows that Mr. Richard was mistaken in his testimony when he says that the affidavit had been made immediately after the accused was imprisoned. The court found as a fact that no affidavit had been made, no warrant issued, for the arrest of the accused, Will Jackson, before the morning of the day upon which the testimony was taken.

The third bill was to the action taken to the ruling of the district judge allowing the testimony of Frances Davis, taken in writing before the trial by the deputy clerk under the order of the district judge, under Act No. 124, p. 179, of 1896, to be admitted in evidence. The objections made were the same as those urged to the admission of the testimony of John Davis, taken at the same time. At the foot of this bill the district judge states he overruled these objections for the same reasons which were given for overruling those made to the admission of the testimony of John Davis. He states that Frances Davis was brought here by Ed Farlow from Mississippi, at the time that John Davis came over with Mr. Farlow, and it seems that she disappeared from the parish about the time that John Davis, the man who was looked upon as her husband, did; and, he having gone back to Gulfport, Miss., it was reasonable to suppose that she went back there with him. Mr. Farlow is a white man—the section foreman of the S. P. R. R. Co. at West-

lake, in Calcasieu—and he had brought these witnesses, who were negroes, with him.

The testimony of Farlow was taken as to Frances Davis. He testified that he knew her. She was in Calcasieu in October, 1902. She was from Gulfport, Miss. She came to Calcasieu with John Davis, as his wife. He did not know whether she left the parish with him, and whether they went off together. He had not seen her for months—not for the last three or four months. She came to Calcasieu as his (John Davis') wife.

The proceedings and testimony taken before the deputy clerk under the act of 1896 are not in the record. There is nothing going to show that accused made at that time any application to the district judge for a modification, in any way, of his order, or on any ground.

Act No. 124, p. 179, of 1896, referred to in the bills of exception, is entitled "An act relative to the taking of testimony of witnesses in criminal cases."

By its provisions any witness in any criminal case, where he may be imprisoned in default of giving bond for his or her appearance at the trial of any one accused of crime, to testify in such prosecution, shall have the right to have his or her testimony taken, and be enlarged, under the following circumstances: When any witness in prison shall desire to have his or her evidence taken on any prosecution, he shall apply to the judge of the court in which such prosecution is pending to have his or her testimony taken in writing, and thereupon the judge shall order said testimony to be taken in writing before him, in court or in chambers, or before any clerk of court or deputy clerk or recorder, after giving at least two days' personal notice to the accused and to the district attorney to be present at the time and place of the taking of said testimony; and, in case the accused resides out of said parish, ten days' notice shall be given to him from the date of the service of said notice, which testimony, when so taken in writing, shall be sworn to and signed by said witness, if he knows how to write; if not, by his ordinary mark attested by the officer taking the same; and the testimony so certified shall be without delay returned, by the officer taking the same, into the court, together with the said notice, and the officer's return of service annexed and at-

tached thereto, in which the said prosecution is pending, and thereupon the said witness shall be discharged from custody. Said testimony, in case of the death or departure of the witness from the parish or other inability to attend court, shall be admissible before the grand jury as well as before the petit jury on the trial of the accused, subject to all legal objections, but the same shall not be admissible when the presence of said witness can be procured by subpœna. In case the accused is in jail the sheriff shall be notified, and it shall be his duty to produce said accused at said time and place, to be confronted with the witness. All laws in conflict with or contrary to the provisions of the act were repealed.

Sections 664 and 665 of the Revised Statutes of 1876, referring to the coroner's inquest, provide that if the coroner's jury find that any murder or manslaughter has been committed on the deceased the coroner shall bind over by recognizance such witnesses as he shall think proper, to appear and testify at the next court to be held in the parish at which an indictment for such offense can be found; he shall also return to the court the inquisition, written evidence, and all recognizances and examinations by him taken, and may commit to the jail of the parish any witnesses who shall refuse to recognize in such manner as he shall direct; that if any person charged by the inquest with having committed such offense shall not be in custody the coroner shall arrest and conduct him before some committing magistrate in the parish in which the inquest is held, to be examined and proceeded with according to law.

The accused did not apply for a continuance on the ground of the nonattendance of the witnesses John Davis and Frances Davis at the trial. Neither at that time nor afterwards did he assert that they were then in Calcasieu, likely to return there, or that they could be reached by process. He did not attempt to obtain a new trial on that ground. The sweeping general objection made by accused to the introduction in evidence of the testimony of these two witnesses, that "the state had not laid the foundation for the introduction of this testimony, and it was not shown that the Act No. 124, p. 179, of 1896, authorizing testimony of this kind to be

111 La.—12

taken was complied with," was followed only by the specific objections that "no judicial accusation against the accused had been made prior to the day on which the testimony was taken, and that all orders to take testimony without judicial accusation being made against the accused were absolutely null, and that the attorney for the accused objected to the taking of the testimony on that date."

The objection urged by the accused is not that he was not confronted with John Davis and Frances Davis when that testimony was taken, but that under the law he could not have been legally compelled to confront them at the time and place and under the circumstances he was made to do so. We do not understand defendant to claim that these witnesses could have been reached by process at the time of trial; that they were then in the parish of Calcasieu or likely to be. We understand plaintiff, when he alleges that the provisions of Act No. 124, p. 179, of 1896, were not complied with, to mean that the taking of the testimony of the witnesses named at the time and under the circumstances was not warranted by the law by virtue of which this was done. Had defendant objected to the introduction of the testimony on a claim that these witnesses were in a position to be confronted by him because they were within the jurisdiction of the court, he should have urged this specifically, and not under such a sweeping general objection as "the provisions of the act of 124, p. 179, of 1896 were not complied with," or that the "state had not laid the foundation for the introduction of the testimony."

Had this really been the objection, accused, had he believed it had been erroneously overruled, should have made the ruling of the court the subject of complaint in a motion for a new trial, and offered to prove, and proved, on the trial of the motion, that the witnesses named were in point of fact in the parish of Calcasieu or likely to be. Such a fact was susceptible of easy establishment had it existed.

The real defense in this case is that, at the time the district judge granted his order for the taking of the testimony of John and Frances Davis, there was no prosecution pending against them in that court or in any

other court, and there was no such prosecution pending in that court subsequently until the finding of the grand jury; that, therefore, under the law of 1896, no application could have been made by the witnesses for the taking of their testimony until there should have been a "prosecution pending" somewhere against the prisoner, and that no notices could have been legally issued to him prior to the pendency of such a prosecution. There was no objection made to the introduction of the evidence itself on the ground that accused was not advised in point of fact at the time of the taking of the testimony of the nature and character of the charge made against him. There is nothing indicating that appellants have in reality been prejudiced by the taking of the testimony before the deputy clerk.

Appellant was unquestionably verbally "accused" of the killing of Robertson from the very night of the killing, and he was also accused of the killing on the 3d of October by the verdict of the coroner's inquest, and he was detained in jail under that accusation from October 3, 1902.

Clark, in his work of Criminal Procedure, refers as follows to the finding of a coroner's jury:

"On this a person may at common law be prosecuted for murder or manslaughter without the intervention of a grand jury, for the finding of a coroner's jury is of itself equivalent to the finding of a grand jury. The accused is arraigned on the inquisition as on an indictment and the subsequent proceedings are the same. No indictment is necessary unless required by statute, but the practice is generally to indict, and the trial is then had on the indictment. Reg. v Ingham, 9 Cox, Crim. Cas. 508."

"When the jury have returned a verdict of murder or manslaughter against a person, the coroner must commit him for trial, if present. If he is not in custody, the coroner may issue a warrant for his arrest, and order him to be brought before himself or some magistrate of the jurisdiction, in order that he may be so committed." Clark's Crim. Procedure, c. 4, § 50.

In this state article 9 of the Constitution of 1898 declares that prosecutions shall be by indictment or information, and article 10 that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him.

Act No. 124, p. 179, of 1896, is a remedial statute, and should be liberally construed in aid of the remedy. Its purpose was to release as promptly as possible from confinement witnesses who were detained in prison in order to have them give their testimony upon the trial of criminal cases. To construe the words in that act, "they [the witnesses] shall apply to the judge of the court in which such prosecution is pending," as meaning that the application for release is to be postponed until the filing of an information or the finding of an indictment, would be to defeat the object of the statute. The witnesses being held in jail under commitment by the coroner, in order that their testimony should be taken on the trial of the criminal case in which they were to be used as witnesses, the lawmaker evidently intended that the testimony authorized to be taken under the statute should be made use of in the trial court upon that occasion, and by anticipation to place matters in the situation which would have obtained had the witnesses been kept in jail up to that time, and then given testimony in the district court— a proceeding analogous to that authorized in civil cases, under article 440 of the Code of Practice. The judge authorized to grant the order for the taking of the testimony was evidently intended to be the judge who was to preside at the final trial, himself a commiting magistrate by virtue of his office. We are not aware that, before a district judge can take cognizance of the verdict of a coroner's jury charging a person with a crime, the proceedings must have to be first marked "Filed" in the district court. We are of the opinion that by the words "prosecution pending," used in Act No. 124, p. 179, of 1896, the General Assembly meant "accusation" or "charge pending," and that the judge referred to in that act as being authorized to grant the order for the taking of the testimony was the trial judge, the word "judge" being frequently used as synonymous with the word "court."

This conclusion carries with it the legality of the order of the district judge authorizing the taking of the testimony of John and Frances Davis, and sustains his ruling permitting their testimony to be introduced in

evidence on the trial of the cause. The judgment appealed from is therefore affirmed.

MONROE, J., dissents.