(78 South. 116)

No. 22928.

STATE v. HARDY.

(Feb. 25, 1918.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ⟨⇒⟩1153(5)—DISCRETION OF TRIAL COURT—SEPARATION OF WITNESSES—REVIEW.

The matter of the separation of witnesses in a criminal case is largely within the discretion of the trial court, which will not be controlled by this court, save when plainly abused, to the prejudice of the defendant.

2. WITNESSES ⟨⇒⟩267—CROSS-EXAMINATION.

The trial judge may restrict the cross-examination of a witness in a criminal case within reasonable limits.

3. CRIMINAL LAW ⟨⇒⟩519(4)—WITNESSES ⟨⇒⟩388(1) — CREDIBILITY — IMPEACHMENT — CONFESSION.

The credibility of a defendant in a criminal case may be impeached, upon laying the proper foundation, by evidence of statements made by him which conflict with his testimony; and, though a statement so made, in the form of an answer to a question propounded by the sheriff, while holding such defendant in custody, may involve a confession, it is, nevertheless, admissible in evidence if shown to have been made voluntarily, and without inducement, promise, threat, or intimidation.

4. CRIMINAL LAW ⟨⇒⟩1168(2)—TRIAL—REFUSAL TO RECALL STATE'S WITNESS.

A trial judge does not err in refusing to allow a state witness to be recalled, after the closing of a criminal case, in order that he may be cross-examined concerning threats said to have been made by him against the counsel for the defendant, and which could not have affected the interest of the defendant during the trial.

5. CRIMINAL LAW ⟨⇒⟩829(1) — TRIAL—INSTRUCTIONS—SPECIAL CHARGE.

Where the general charge of the trial judge, in a criminal case, fully covers the law applicable to the facts so far as disclosed to this court, his ruling in refusing a special charge will not be reversed.

6. CRIMINAL LAW ⟨⇒⟩93—JUVENILE COURT—JURISDICTION—CAPITAL CRIME.

In conferring jurisdiction on the juvenile courts, the Constitution makes an exception with respect to capital crimes.

Appeal from Seventeenth Judicial District Court, Parish of Vermillion; W. W. Bailey, Judge.

Cleveland Hardy was convicted of manslaughter, and he appeals. Affirmed.

J. R. Kitchell and John Nugier, both of Abbeville, for appellant. A. V. Coco, Atty. Gen., and Preston J. Greene, Dist. Atty., of Abbeville (Vernon A. Coco, of New Orleans, of counsel), for the State.

MONROE, C. J. Defendant, having been convicted of manslaughter under an indictment for murder, and sentenced to imprisonment at hard labor for not less than five, nor more than six, years, prosecutes this appeal. It appears that he and his sister, the wife of the deceased, were jointly indicted, and that she was acquitted. He has put in no appearance in this court, either in person or by counsel.

[1] 1. We find in the record a bill of exception to the ruling of the trial court in granting the request of the state that George Lege, a witness called by the state, be excepted from an order, granted on motion of defendant, that all the witnesses be sequestered. It appears from the statement per curiam that Lege was the father of two minors, a boy aged 10, and a girl aged 14, who were the only eyewitnesses of the difficulty between the defendant and the deceased, and that the judge considered the request a reasonable one. The bill suggests no prejudice to the defendant; the matter was largely within the discretion of the judge, and, as we find no reason to believe that such discretion was abused, we shall not disturb the ruling. Marr's Cr. Jur. of La. p. 713, § 423.

[2] 2. George Lege, called by the state in rebuttal, was asked, in chief, where he lived and how many children he had, and, having answered, was asked, on cross-examination, where he had lived during the life of his father, to which the state objected, and, the objection having been sustained, a bill was reserved. It appears from the statement of the judge that defendant announced that the pur-

pose of the question was to show the character of the witness in the estimation of his father; that the witness was over 40 years of age, had a large family of his own, that he had been cross-examined for two or three hours, "along those lines," and that the court thought it proper to put an end to it. Also, that he was not an eyewitness to the killing, but testified merely to certain physical facts which affected the charge against defendant's sister and did not concern the case against the defendant.

The judge is vested with a sound discretion in the matter of controlling the examination of witnesses within proper limits, and defendant shows no ground for complaint of the exercise of that discretion in the instance disclosed by the bill. State v. Jackson, 111 La. 343, 35 South. 593; State v. Haab, 105 La. 230, 29 South. 725.

[3] 3. From the recitals of another bill, the statement of the judge, and the testimony of the sheriff annexed thereto, it appears that the two children heretofore mentioned called by the state (being the only witnesses, other than the defendant now before the court and his sister and codefendant who actually saw the difficulty which resulted in the killing), testified that they heard defendant say to decedent, "Come out here, you half nigger, and I will cut your ribs out;" that thereupon decedent walked up to defendant and gave him "one slap, a pushing slap that pushed him down"; that defendant's sister then stepped between them, laying her hands on the arms of decedent who apparently offered no resistance, and was pushing him backward; that while she was so doing defendant was standing behind her, watching decedent over her right shoulder, and a short time afterwards reached over and stabbed decedent in the neck with what appeared to be a pocketknife; that decedent then pursued defendant for some distance, and, returning, asked that the sheriff be sent for, and that he died soon afterwards.

The two defendants, as witnesses in their own behalf, testified that decedent was a grown man, something over five feet in height, 21 years old, married and the father of two children; that he first assaulted the defendant now before the court and knocked him down three times with his clenched fist; that defendant then escaped and ran; that decedent pursued and overtook him and again knocked him down, and that, upon his arising, seized him by the throat and was choking him when defendant, then a boy not yet 16 years of age, who had an open knife in his hand, in defending himself against the attack of the decedent, must have stabbed him in the neck, from which wound he bled to death. The trial judge makes the further statement that defendant's testimony, if believed, established the plea of self-defense, and that he also testified to circumstances tending to show that the stabbing was accidental, in fact, that he so stated on cross-examination; that he denied having made any statements in conflict with his testimony; denied that he had spoken to the sheriff or Mr. Kibbe about the killing; denied that he had told the sheriff, the day after the killing, on the train, on their way to the prison at New Iberia, that he had stabbed the deceased because the latter had given him a slap; that he was warned that the district attorney proposed to contradict him by the testimony of the sheriff as to his statement made on the train, and was given every opportunity to modify or correct his testimony, but still declined to admit that he had made the statement to the sheriff as attributed to him. The sheriff was then called in rebuttal to show that such statement had been made to him, and his testimony was objected to—

"on the ground that it is a purported confession; that it is not clear that it is the whole of the conversation at the time; * * * that the boy was in such a state of mind at the time, being a young lad, having been chained all night before, that he should not be bound by any statement at that time to the sheriff, especially as

this record discloses that the boy did not originally volunteer any statement at all, but what was said was the result of a conversation, initiated by the sheriff, and was only in response to a question propounded by the sheriff, in whose custody he was at the time; * * * that the witness had been placed upon the stand in rebuttal of defendant's case, and the testimony sought to be elicited is intended to impeach the testimony of the defendant, * * * and is not admissible for that purpose, for the reason that the proper foundation for impeaching testimony has not been laid by previously placing the witness Cleveland Hardy upon his guard as to the exact place, time, and circumstance of the alleged statement."

From the statement of the judge it appears that the proper foundation for the impeachment of the witness was laid, and that defendant was placed fully upon his guard, and from the testimony of the sheriff, and that of the jailer, Kibbe (annexed to bill No. 6) at which the objections were leveled, it appears that the killing took place at or near Abbeville, at which place the jail was out of repair, by reason whereof defendant was taken for safe-keeping, until he could be transferred to the jail at the parish seat, to the residence of the jailer, where he was placed, with other prisoners, in a "little house," and for the night was secured by having a handcuff placed on one arm, to which was attached a chain the other end of which was fastened to the bed in which he slept; that on the following day he was delivered, unchained, to the sheriff at the train for conveyance to New Iberia; that whilst on the way the sheriff asked him why he had stabbed his brother-in-law, and that he replied (both question and answer having been in French) "Parce qu'il me sacre une tappe sur la tête," meaning because he gave me a "hard slap" on the head. The sheriff testifies that he offered the boy no inducements and made no threats; that he did not further inquire into the matter, because he did not wish to make the boy talk in the presence of the crowd that was on the train, and that that was all that was said on the train upon the subject. He was asked, as is usual in such cases, whether it was not possible that he might not have remembered everything that the boy said, to which he replied, "It might be; I can't say anything that I don't remember; that is all I remember." Our conclusion, then, is that there was no error in the ruling complained of. The proper foundation having been laid, the testimony of the sheriff was clearly admissible in rebuttal, as tending to show that the boy had made a statement at variance with the testimony given by him in support of the theories of self-defense and accident upon which he relied, and, if the statement be regarded as a confession, it was nevertheless admissible, since it was made without inducement, intimidation, or duress; the circumstances under which it was made being such that he would have been more likely than otherwise to have given the strongest reasons within his knowledge in justification or extenuation of the act with which he was charged, and of which he made no denial. A confession is none the less voluntary and admissible in evidence because elicited by a question propounded by an officer to a prisoner in his custody. Marr's Cr. Jur. of La. pp. 646, 647, notes j, k, l, m, n, o, p, q.

4. O. V. Kibbe, jailer, was also called in rebuttal, and over an objection by defendant's counsel, testified that the jail at Abbeville having been undergoing repairs he had several prisoners in his custody at his place, "in a little house out there," and among them the defendant; that he went to the house the next morning, and after looking at defendant remarked to one of the others that the fellow could not have hurt him when he struck him, because he had not any scar or bruise that he could see, to which defendant answered:

"That the fellow hadn't hurt him, but had only slapped him, and I said 'He didn't hurt you then?' He answered, 'No;' that the fellow had only slapped him. Then he volunteered and told me how it happened. He said he had a horse hitched to a sleigh and was hauling a

bed to his sister's and his harness broke and he went to fix his harness, and he opened his knife to bore a hole in the harness to tie them together —that is when he opened his knife to bore a hole in the harness to tie them together—that is when the fellow came up and slapped him; he started to fall, and, as he started to fall, he went to catch onto the fellow, to keep from falling, and that is when the knife struck him."

The judge states that the same foundation was laid as in the introduction of the testimony of the sheriff, and we find no error in the ruling admitting that of the jailer.

[4] 5. Another bill recites that after the witness George Lege had left the stand it came to the knowledge of defendant's counsel that he had made threats against them because of a question that had been asked him, and that after the case was closed they asked to have him recalled in order that they might cross-examine him on the subject, the purpose being—

"to show the animus of the witness George Lege as a witness, towards counsel representing the defendant, and to intimidate them in their efforts towards assisting the accused, and, generally, to lay the foundation to impeach his testimony."

The matter seems to have been rather personal to the counsel and to have, perhaps, concerned the discipline of the court. It could not have affected the interest of this defendant, since, as appears in a bill heretofore considered, the testimony of the witness did not bear upon that interest. We find no error in the ruling of the judge.

[5] 6. Counsel for defendant requested the court to give a special charge, embodying, in part, familiar principles of the law of self-defense, but including the following:

"And a simple assault, accompanied by other acts or circumstances justifying the belief that it would be carried so far as to imperil life, justifies the taking of life in self-defense. And an unprovoked and brutal assault by one of greatly superior strength who had already demonstrated his power and purpose to do great bodily harm, recklessly and angrily persisted in, justifies the person assaulted in killing him, when that reasonably appears to him to be the only accessible means of stopping the assault."

The trial judge refers to his statement made in connection with the bill to the overruling of the objection to the testimony of the sheriff, as reciting the facts testified to, and to his general charge which we find copied at length in the transcript, including the following:

"The jury is authorized to consider the physical capacity of two persons engaged in a difficulty, in a prosecution against one for killing the other, in which self-defense is set up, in determining whether the slayer acted within his rights."

The general charge is exhaustive and fully covers the law applicable to the facts disclosed by the bills or otherwise. We do not find that the judge erred in refusing the special charge.

[6] 7. A bill was reserved to the overruling of a motion for new trial based upon the ground that defendant was under 16 years of age at the time of the homicide, and that his trial should have taken place before the juvenile court.

But, in conferring jurisdiction upon the juvenile courts, the Constitution makes an exception with respect to "capital crimes," and defendant was charged with and prosecuted for murder. Const. art. 118, § 3.

Judgment affirmed.