Statement of the Case.
NICHOLLS, J.
Appellant, indicted for the murder of one John Wesley, was convicted of manslaughter, and sentenced to 10 years’ imprisonment in the penitentiary.
The first bill of exception reserved was to the refusal of the court to permit a witness for the state to be asked upon cross-examination “whether it was not a fact that the deceased party was in the habit of going armed,” upon the objection made by the district attorney that the proper foundation for the question had not been laid.
The court having ordered that the facts upon which the bill was founded should be taken down in open court, such statement *783 of facts is annexed to and made part of the bill as follows:
“Witness Godfrey Johnson, being the only witness sworn, testified substantially as follows: That he was at tbe bouse of Charlotte Simon, mother of the accused party; that tbe accused party lived there also; that the deceased party had been sleeping there at the house of Charlotte Simon for some time; that on the night of the difficulty the accused party, Clayton, came to the house first, had walked out in the yard or somewhere about the premises. While he was out the deceased came in. The accused party returned to the house and approached the deceased, John Wesley, who was standing on the lower gallery, which was in front of that portion of the house occupied by Clayton. Addressing the deceased, he said, ‘Why did you shoot at me to-day?’ and the deceased responded: T did not shoot at you. You had an ax, and I merely shot to make you get back off of me.’
“The accused then struck the deceased two blows, one on the head and one on the arm, with a piece of quilting frame about as wide as witness’ two fingers and about two feet long, of cypress wood. That as the accused party struck the third blow the deceased drew a pistol from his left pocket with his left hand, and fired, which missed the accused. The accused then fired three shots at the deceased. Witness stated that he only saw one wound, which was in the muscle of deceased’s left arm, and he could not say whether the other shots took effect or not, but he died within ten minutes after he was shot.”
Tbe second bill was reserved to the use by the district attorney of the following language in bis closing argument to tbe jury:
“I believe there was a deliberate and premeditated concocted scheme to kill the deceased.”
In the per curiam annexed to tbe bill it is stated that:
“Counsel for the state, immediately after the bill was reserved, explained to the jury that the above statement was an opinion founded entirely upon the evidence introduced upon the trial of the case, and was in no sense an individual opinion. The district attorney further warned the jury that they must not let what he said nor what the defendant’s attorney said weigh with them at all, but they must be guided solely by the evidence.”
Opinion.
The court does not seem to have taken any action in tbe matter, nor to have been asked to do so.
Tbe matter presented to us under the first bill of exception is limited to tbe specific objection made that tbe question which tbe accused sought to have answered was not permitted to be asked.
Defendant’s counsel, in bis brief, has widened the matter submitted to us in a discussion of tbe circumstances under which the question could or could not be asked generally. He says:
“It is not every aggression which produces a difficulty which is an unlawful one within the meaning of the law, nor is it every fault which a man might commit that precludes him from defending- himself when violently assaulted or menaced, nor is it every provocation of a difficulty which robs him of the right to self-defense. Am. & Eng. Ency. of Law (2d Ed.) vol. 25, p. 208, and cases cited. In a number of cases it has been decided that, if the person who provokes or brings on the difficulty does so without the felonious intention of taking life or inflicting great bodily harm, but only intends to chastise his adversary, he does not entirely forfeit the right of self-defense, however reprehensible his conduct may have been.”
Confining ourselves to the facts of the case at bar, the action of the court in refusing to allow the question to be asked was unquestionably correct.
From the testimony it would seem that the accused and the deceased must have had a difficulty of some kind with each other on the morning of the day upon which the homicide occurred. The particulars of that difficulty appear no further than is shown by the testimony of the witness Johnson, who declares that when the parties met on the night of the killing the accused asked the deceased “why he had shot at him that day,” to which the latter replied, admitting as a fact that he had shot in his direction, but denying that the shot was directed at him for the purpose of injuring him. On the contrary, he expressly states that the object of the shot was to cause the deceased (then armed with an ax) to get back of him; in other words, for the purpose of deterring the deceased from advancing upon him with the ax.
The parties had obviously separated in the morning without injury to either. Notwithstanding this disclaimer on the part of *785 the deceased of having occupied in the prior difficulty any position other than a defensive one. and notwithstanding the fact that there was nothing done by him at that time which would indicate the slightest intention by Wesley of attacking him, accused at once moved upon the deceased, and struck him several times on the head and arm with a stick. The consequence of that act was just what the accused must have had reason to anticipate would happen- — his being shot at by the deceased, who, on being struck, immediately drew his pistol and fired. What the legal situation would have been as to Wesley had this shot killed Clayton instead of missing him, we need not inquire; but it is very clear that in the difficulty which then occurred the accused was the aggressor; that he provoked and brought on the attack upon himself which directly led to Wesley’s death.
It cannot be seriously urged under the circumstances disclosed that Clayton could justify his act and be acquitted on the ground that he acted in self-defense. A verdict of manslaughter against him would be the very lightest which he or his counsel could expect to be rendered in the premises. The situation would not have been bettered in appellant’s favor had the court permitted the question to be asked whether the deceased had not been in the habit of going armed, and an affirmative answer had been given.
Had it been shown that such was the habit of the deceased, and that the accused was aware of it (which was not shown), the resulting situation should have led Clayton to a conduct very different from that which he actually followed. He should have acted with the greatest prudence and circumspection, avoiding originating and bringing on a fight with a man so quarrelsome and dangerous as counsel represent the deceased to have been. He was not warranted in bringing into action the dangerous qualities of the deceased. He had no right to assume that they might be brought to bear on him on some future occasion, and to force an issue on him at that particular time.
The remarks of the district attorney in his argument to the jury were very improper. We have sought upon a number of occasions to impress upon district attorneys the fact that in attempting to bring to bear upon the jury the weight of their individual personal belief and opinion as to the guilt or innocence of accused parties, they were acting outside of, beyond, and contrary to their duty, and that in so doing they were also seriously jeopardizing the interests of the state. In this particular case the jury does not seem to have been at all influenced by the expressions of the district attorney. On the contrary, they entirely disregarded them.
We find no error in the court below. The verdict of the jury and the judgment of the court thereon are therefore affirmed.