(49 South. 1006.)

No. 17,575.

STATE ex rel. EDMUNDS v. CAPDE-
VIELLE, Auditor.

(June 14, 1909.)

STATES (§§ 130, 137*)—PAYMENT OF CLAIMS—
NECESSITY OF APPROPRIATION.

There is no special appropriation made to pay plaintiff's claim.

The Auditor is without authority to draw a warrant if there are no funds to pay it in the hands of the Treasurer.

There was a deficiency act adopted which specially refers to plaintiff's contract.

There is an act limiting the amount to be expended for printing each year. The Auditor could not draw a warrant on an amount exceeding the limit without violating this last act.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 128, 134; Dec. Dig. §§ 130, 137.*]

(Syllabus by the Court.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harney Felix Brunot, Judge.

Application by the State, on the relation of James E. Edmunds, for writ of mandamus against Paul Capdevielle, Auditor. From an order granting the writ, defendant appeals. Reversed, and suit dismissed.

Walter Guion, Atty. Gen. (Ruffin Golson Pleasant, of counsel), for appellant. Laycock & Beale and Charles Cecil Bird, Jr., for appellee.

BREAUX, C. J. The relator applied to the district court for a mandamus to compel the Auditor to issue a warrant in his favor to the Treasurer in the sum of $12,408.31.

The relator was state printer. His contract as state printer began on November 28, 1906, and terminated on August 1, 1908.

He performed the work required under the contract, and furnished necessary material.

The Auditor declined to pay the amount for the reason that the General Assembly had by Act No. 90, p. 132, of 1908, made an appropriation of $50,000 to meet deficiencies in the state printing appropriations, which deficiency act covered relator's claim. That he has been paid, and that he cannot recover in excess of that amount.

The Auditor further contends that the General Assembly has made no appropriation for the payment of the amount claimed; that the only appropriation to pay the state printer is contained in the general appropriation bill of 1908, consisting of $35,000 intended to pay for current state printing, and is not an amount due for printing done previous to the 1st of August, 1908; that the General Assembly by Act No. 88, p. 106, of 1908, declared that the amount to be expended for all state printing was limited to the sum of $35,000, and that the

state printing board, acting within the authority it has by the provisions of Act No. 184, p. 270, of 1908, has properly applied that amount to the payment of current printing expenses; that the board apportioned and allotted the entire amount of $35,000 thus appropriated, and that respondent has no authority to warrant the State Treasurer in favor of relator to be paid out of the amount thus appropriated by the General Assembly and apportioned among the several departments of the state government.

### Reasons for Judgment.

The state's fiscal year begins on July 1st, and ends June 30th. Provision is made to pay the public printer's bill each fiscal year.

To go back a few years. It appears that in the year 1904 there was a deficiency. Act No. 83, p. 204, of the year 1904, made provision to pay this deficiency in the general appropriation act. The amount of the deficiency was some $12,500.

The deficiency act states how it was that the deficiency had arisen. It refers to the additional expense for publishing proposed constitutional amendments in 1902, expenses of the extra session of the Legislature of 1903. These expenses were paid in accordance with the provisions of the deficiency act adopted in the year before mentioned.

But the printing and supplies which had not been paid for July, 1904, were paid out of the general appropriation for state printing made for the fiscal year beginning July 1, 1904, and ending July 1, 1905. In other words, despite the act intended to cover deficiencies, the state printer was paid from funds set aside under the general appropriation act.

Relator's contention is that this was a practical recognition of the right to draw against funds raised under the general appropriation act to pay amounts provided for in the deficiency act.

That it was a practical and contemporaneous recognition of the right that that which had been done in the year 1904 should be done at this time under similar circumstances as relates to the month of July, 1908. The contention of relator is that the condition is absolutely the same.

Upon this point, we are constrained to differ from learned counsel who represent relator. The condition is not the same. In 1908, $50,000 were appropriated to pay the deficiency in the appropriation made for public printing during the life of the state printing contract, which expired August 1, 1908. This is not all that was done. Different from the legislation of 1904, the legislation in 1908 went further and imposed special condition to which we will refer in a moment.

Act No. 90, p. 132, of 1908 (the deficiency act), recites:

"To twenty-three thousand dollars to cover the present contract," i. e., relator's contract, which terminated in 1908. It also provided for the payment of the expenses of the primary election held in 1906, and for other expenses.

This act was approved July 2, 1908. It practically mentions that this appropriation is made to meet deficiency incurred under the contract which expired on the 1st of August of that year.

Twice in the act reference is made to the present contract; that is, to the contract on which relator sued. It can refer to no other contract. There is none other to which it can refer.

In considering this point, bear in mind that relator's contract expired on the 1st of August, 1908. The amount covered by the deficiency act has been paid to the state printer. If this were all, it would, perhaps, be possible to construe that, inasmuch as the statute has undergone practical construction by the officers in charge, the relator should recover. But there is another act

which is quite emphatic and is directly pertinent. The act creates the printing board. It is Act No. 184, p. 270, of 1908. In that act, it is provided that the total appropriation contemplated to be made under the act for public printing shall not exceed for any year the sum of $35,000.

If the Auditor were to issue a warrant to relator for the sum he claims against the current fund for the year ending August 1, 1908, it would exceed the legislative limit just stated by the amount of plaintiff's claim, and every cent in excess of the limit would be in conflict with the provision of the last cited act, which limits the appropriation, as we have just stated, to $35,000.

There was no such limit placed on the appropriations in the year 1904, to which relator refers, and which he invokes as authority for allowing his claim to a warrant.

The claim cannot be paid if no specific appropriation has been made for its payment. Issuing a warrant would be doing that which the lawmaking power has ordered should not be done.

The appropriation made for deficiency in 1908 was intended to cover all deficiencies which were due to relator. The Auditor has no authority to take it out from the category of the deficiency and issue a warrant for its payment from current printing expenses of the year.

There is another ground which has attracted our attention, and which has the appearance of being determinative of relator's want of right to a warrant. There is no money in the treasury to pay the amount. This is established beyond cavil. Even the $35,000 have been apportioned to the purposes, the testimony proves. The Auditor cannot in law draw a warrant when he is absolutely certain that there is no fund to pay it.

The asserted ultra vires act of the printing board in appropriating the fund is not before us in this proceeding. We take it that this board sought to observe the legislative mandate before mentioned. It was sufficient to justify the Auditor that he knew there was no fund against which to draw.

There is still another ground. The printing bills for July, 1908, were for a contract which terminated on August 1, 1908. The general appropriation act provided for the payment of the current expenses for the printing department (not for the month of July, 1908), but for the whole year—two years in fact—$35,000 each year.

Other legislation to which we have before referred has in terms emphasized that this month was not in contemplation when the general appropriation act was adopted. We refer to the deficiency act before mentioned as covering or intended to cover relator's claim.

The question may arise: Why should not relator be paid out of the fund—that is, the $35,000—and let others take their chances to be paid hereafter? That question would commend itself were it not that the General Assembly has made provision toward payment, which payment relator received, and has in effect indicated that this amount was not to be paid out of the current fund. Relator's claim is a deficiency which must be left to legislative discretion. The relator should unquestionably be paid for bills he has earned. But we do not see our way clear to a decree that would be in direct contravention of the statute.

For reasons assigned, the judgment appealed from is annulled, avoided, and reversed. It is ordered, adjudged, and decreed that relator's suit and his demand be dismissed, and that he pay the costs of both courts.