(102 So. 507)

No. 26693.

## STATE v. CONSTANZA et al.

(July 8, 1924. Rehearing Denied Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

1. Criminal law ⬲659—Remarks of prosecuting witness that interpreter was not repeating what witness on stand was saying held not reversible error.

Remarks of victim in prosecution for robbery to district attorney that interpreter was not repeating what witness on the stand was saying *held* not reversible error.

2. Witnesses ⬲240(4)—Question asked witness held not erroneous as being leading.

Question asked witness as to what she did when she saw men put guns to her husband's stomach and her son's head *held* not erroneous as being leading, though witness had not previously testified to that effect, where such facts had already been established by other witnesses, and witness had testified that she saw two men and heard them say to her husband and son to hold up their hands, and she saw these men hold pistols to them.

3. Criminal law ⬲693—Attempt to withdraw question asked by defendant on cross-examination, because answer thereto was hearsay, held too late.

Objection by defendant to answer to question asked by him on cross-examination as being hearsay, and his attempt to withdraw question, came too late, where answer was responsive to question asked, and was given in presence of jury.

4. Witnesses ⬲245—Question constituting substantial repetition of witness' testimony not erroneous, where merely clarifying facts testified to by witness.

Question which constituted substantial repetition of testimony given by witness was not erroneous, where it was asked to clarify and elucidate facts testified to by witness.

5. Witnesses ⬲240(4)—Question whether witness saw flash of pistol held not objectionable as being leading.

Where witness had testified in prosecution for robbery that firing was done by men who ran out of victim's gate, question whether he saw flash of pistol was not objectionable as being leading.

6. Criminal law ⬲1171(1)—Verdict approved by trial judge not set aside for improper conduct of district attorney, unless it contributed to verdict.

Verdict approved by trial judge will not be set aside because of improper conduct of district attorney, unless Supreme Court is convinced that what district attorney improperly did contributed to verdict found.

7. Criminal law ⬲665(1)—Separation of father of accused from other witnesses held not erroneous.

Order directing that father of accused in a prosecution for robbery who had testified in his behalf be separated from other witnesses did not constitute error, where court on defendant's request had prior thereto ordered a severance of all the witnesses.

8. Criminal law ⬲665(1)—Granting or refusing of motion for separation of witnesses within discretion of trial judge.

Granting or refusing of a motion for separation or sequestration of witnesses is within sound discretion of trial judge.

9. Criminal law ⬲1064(1)—Allegation that verdict contrary to law and evidence presents nothing for review.

Mere allegation that verdict is contrary to the law and evidence presents nothing for review.

10. Criminal law ⬲1159(2)—Jury sole judges of whether accused has been given benefit of reasonable doubt.

Whether accused has been given benefit of a reasonable doubt is a question of fact under Constitution, of which jury are the sole judges.

On Rehearing.

11. Criminal law ⬲1083—Trial judge held without jurisdiction when per curiams were signed after appeal taken.

Trial judge was without jurisdiction of a prosecution for robbery at time per curiams were prepared and signed, where they were prepared and signed by him long after appeal had been granted and transcript filed in Supreme Court, and were sent up in response to certiorari.

12. Criminal law ⬲1110(8)—Supreme Court held without jurisdiction to consider or act on per curiams, signed after appeal taken.

Supreme Court was without jurisdiction to consider or act on per curiams of trial judge, where they were prepared and signed by him

long after appeal had been granted and after transcript had been filed in Supreme Court, and were sent up in response to certiorari.

**13. Witnesses ⬡⇒330(3)—Objection that question was collateral to the issue held properly overruled.**

Objection that question to father of accused, in prosecution for robbery, whether he had gone to victim's house after crime, and sent emissaries on behalf of his son, after he had contradicted testimony of victim's wife that he had admitted to her that his son had committed the crime, was collateral to the issue, and was properly overruled, where court permitted question as tending to test credibility of witness, and so instructed jury.

**14. Criminal law ⬡⇒1170½(5)—Cross-examination of father of accused in prosecution for robbery held not reversible error.**

Cross-examination of father of one of accused in prosecution for robbery whether he had gone to victim's house after crime, and sent emissaries on behalf of his son, after he had contradicted testimony of victim's wife that he had admitted that his son had committed the crime, did not constitute reversible error, where defendants themselves provoked inquiry, and father denied making the statement imputed to him by victim's wife and sending persons to victim's house, and no further attempt was made by state to impeach him on matter involved, and jury was left to determine credibility of two conflicting witnesses.

**15. Criminal law ⬡⇒1170½(3)—No harmful effect results from an unanswered question.**

No harmful effect can result from an unanswered question.

**16. Criminal law ⬡⇒1170½(5)—Impeaching witness without producing witnesses to sustain proffered impeachment held not reversible error.**

Cross-examination of witness for accused in prosecution for robbery, attributing to him certain statements or acts which were within themselves highly prejudicial to accused for purpose of impeaching witness, and then failing to produce witnesses to sustain proffered impeachment or to account for their nonproduction, did not constitute reversible error, where, on motion of district attorney, instanter subpœnas were issued for two of such witnesses, and defendants failed to call jury's attention to fact that they had not been produced, or to ask for appropriate instructions from court.

Appeal from Criminal District Court, Parish of Orleans; N. E. Humphrey, Judge.

Sam Constanza and M. Lee Mulcahy were convicted of entering a dwelling house in the nighttime, with intent to steal, and they appeal. Affirmed.

Ulic J. Burke and N. G. Carbajal, both of New Orleans, for appellants.

Percy Saint, Atty. Gen., Robert H. Marr, Dist. Atty., of New Orleans (Percy T. Ogden, of Crowley, and M. M. Irwin, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

BRUNOT, J. Sam Constanza, M. Lee Mulcahy, and John Gallicio were charged with entering a dwelling house in the nighttime, with intent to steal, and with stealing $200 in currency, the property of Steve D'Asaro. When the evidence was concluded the prosecution was abandoned as to John Gallicio; the jury returned a verdict of guilty as charged as to the other two accused, and they were sentenced to imprisonment in the state penitentiary at hard labor for not less than four and one-half years nor more than five years. From this verdict and sentence they have appealed.

Appellants rely upon eight bills of exception.

[1] Bill No. 1 was reserved to a remark made by Steve D'Asaro to the district attorney during the progress of the trial. The bill recites that while Salvador D'Asaro, a witness for the state, was on direct examination he was asked to tell the whole story. His answer, as it was interpreted, was as follows:

"They came in and they drew a pistol, and they put it to my stomach, and they told me to raise my hands."

At this time Steve D'Asaro, who was seated near the district attorney, remarked that "the interpreter is not repeating what the witness said." Counsel for defendants ob-

jected to this remark. The per curiam to this bill is as follows:

"There was some difficulty in securing an interpreter, and finally Henry Audoin, a deputy sheriff, was sworn as interpreter. He stated that he would do the best he could. While interpreting one of the witness's answers Steve D'Asaro, who was sitting near the district attorney, suggested to the district attorney that the interpreter was not correct. This was said in an ordinary tone of voice. The court at the time directed Steve D'Asaro to speak in a lower tone if he wished to again call the district attorney's attention to any matter and the court was of the opinion that no harm was done."

There is no merit in this bill. In State v. Wimby, 119 La. 139, 43 So. 984, 12 L. R. A. (N. S.) 98, 121 Am. St. Rep. 507, 12 Ann. Cas. 643, the court says:

"In State v. Renaud, 50 La. Ann. 662, 23 So. 894, the father of the deceased was sitting in the audience. The district attorney in the course of his address to the jury remarked: 'What will you do with the accused?' The father exclaimed: 'Put a rope around his neck.' The judge at once took the necessary steps to prevent the repetition of any such remarks in the court. The verdict was guilty of murder as charged, and the accused was sentenced to be hanged. The court refused to set aside the verdict, holding that the incident could not be viewed as having unduly influenced the verdict. In State v. Robinson, 52 La. Ann. 551, 27 So. 129, a brother of the deceased interrupted and contradicted the accused while testifying in his own behalf. * * * 'This court declined to interfere, saying that the opinion of a district judge that the incident did not affect the verdict was a finding on a matter which he was peculiarly competent to determine. In State v. Spillers, 105 La. 163, 29 So. 480, a murder case, the district attorney in closing his address appealed to the jury to bring in a verdict of guilty, whereupon the crowd in the courtroom burst into applause, which the judge immediately suppressed, * * * at the same time instructing the jury to disregard the applause, and to be governed by their opinion alone. The defendant was found guilty as charged, and was sentenced to death. This court refused to interfere; it not being evident that the jury was influenced by the incident. It is a general rule that 'remarks of bystanders unfavorable to the accused, to or in the presence of the jury, and overheard by them, although reprehensible, are not ground for a new trial, unless it shall actually appear that a verdict of conviction was produced thereby.' 12 Cyc. 730."

In this case the bystander merely questioned the accuracy with which the answer of a witness to a question was interpreted.

[2] Bill No. 2 was reserved to a ruling permitting the district attorney to ask the following question of a state witness:

"What did you do at the time you saw the two men put guns to your husband's stomach and to your son's head."

The question was objected to as being leading. The judge's per curiam to this bill is as follows:

"The witness had previously stated in her direct examination, 'I went into the kitchen and saw two men who were saying, hold up your hands, and at the same time holding pistols to them.' The witness was being examined with some difficulty through an interpreter, and it appeared to be necessary to form the questions as plainly as possible. The court did not consider the question leading."

Frivolous objections, such as this appears to be, have an injurious rather than a helpful effect. It is true that this witness had not previously testified that guns were put to her husband's stomach and her son's head, but these facts had already been established by other witnesses, and witness had already testified that she saw two men and had heard them say to her husband and son to hold up their hands and she saw these men hold pistols to them. The only purpose of the question asked by the district attorney was to ascertain from the witness what she did when she saw this assault. No citation of authority is necessary.

[3] Bill No. 3 was reserved to a ruling growing out of the following incident: Counsel for defendants asked Mrs. Salvador D'Asaro, a witness on cross-examination, this question:

"Who told you that it was Constanza's son that committed the robbery?"

The answer of the witness was:

"His father."

Counsel objected to the answer as being hearsay, and he sought to withdraw the question. He was too late. The court so ruled, and the ruling was correct. Counsel asked a question, the answer was responsive to the question, and it was given in the presence of the jury.

[4] Bill No. 4 is equally as frivolous. The district attorney asked the witness this question:

"Who was doing the firing?"

The answer of the witness was:

"The men who were running out of Mr. Steve's gate."

The district attorney then asked:

"The men that were running out of Mr. D'Asaro's gate?"

This question was objected to as being a repetition of the testimony of the witness by the attorney. The witness had said that the shooting was done by the parties who were running out of Mr. Steve's gate, and the purpose of the question was to show that it was Steve D'Asaro's gate that the witness referred to; Steve and D'Asaro being one and the same person. The per curiam of the judge to this bill is as follows:

"In his direct examination, the witness stated, 'I started over to see what was the excitement, and I saw two men running out of Mr. Steve's gate, and as they passed me they started to fire, and I stopped to keep from getting hit and went in.' The court could see nothing objectionable to the question by the prosecution: Q. 'Who was doing the firing?' A. 'The men that ran out of Mr. Steve's gate.' Q. 'The men who were running out of Mr. D'Asaro's gate?' Mr. Steve and Mr. D'Asaro were one and the same person, and the question evidently was asked to avoid confusion, and did not seem to be objectionable."

The district attorney was merely clarifying and elucidating the facts testified to by

157 La.—14

the witness, and the objection is without merit.

[5] Bill No. 5 is also without merit. The witness had testified that the firing was done by the men who ran out of Steve D'Asaro's gate. He was asked the question:

"Did you see the flash of the pistol?"

The question was objected to as being leading. The objection was overruled, and this bill was reserved to the ruling. It is hardly necessary to cite authorities in support of the correctness of that ruling.

[6] Bill No. 6. This bill was reserved to questions propounded by the state to test the credibility of Felix Constanza, the father of one of the accused, and a witness in his behalf. Mrs. Salvador D'Asaro had testified, on cross-examination and in response to a question by counsel for the defendants, that Sam Constanza's father told her his son had committed the robbery. Felix Constanza, on direct examination, contradicted this statement. On cross-examination the district attorney asked him several questions concerning his visits to D'Asaro's house after the holdup and concerning his sending of emissaries, viz., Guinna, Cosmo Valenti, and Guiseppe Popaloni, to D'Asaro in the interest of the accused, to all of which questions counsel for defendants objected. The court ruled that the testimony was admissible for the purpose of testing the credibility of the witness and for that purpose only, and the jury was so instructed. It was also urged, in support of this bill, that Papaloni and Valenti were not sworn as witnesses to contradict the denials of Felix Constanza. The authorities relied upon by counsel have no application to this case, because forthwith subpoenas for these witnesses were issued by the district attorney, in which their correct residence and place of abode was given, and the sheriff's return thereon showed that they could not be found. The state did

everything possible to secure their presence at the trial, and this is all that is required of the state under the ruling in the Guagliardo Case, 146 La. 949, 84 So. 216, which is relied upon by defendants. In that case this court said:

"If he [the district attorney] fails to offer such testimony, and gives as a reason for his failure, not that he was unable to do so, but that he considered it unnecessary, the jurors may be left with the impression that he could have made good his assurance had he so chosen, and particularly may that be true where, as in this case, the court gives the jury no instructions upon the subject."

In this case no objection was made to any part of the charge as given by the court, and no request was made for a special charge. When the questions were asked, the court instructed the jury as to their purpose. The jurisprudence of the state is that a verdict approved by the trial judge will not be set aside because of improper conduct of the district attorney, unless this court is convinced that what the district attorney improperly did contributed to the verdict found. State v. Harper, 143 La. 534, 78 So. 845; State v. Shoemaker, 143 La. 65, 78 So. 240; State v. Thornton, 142 La. 797, 77 So. 634; State v. Ailes, 133 La. 563, 63 So. 172; State v. Johnson, 127 La. 458, 53 So. 702; State v. Hamilton, 124 La. 137, 49 So. 1004, 18 Ann. Cas. 981; State v. Montgomery, 121 La. 1005, 46 So. 997; State v. Forbes, 111 La. 473, 35 So. 710; State v. Thompson, 109 La. 296, 33 So. 320; State v. Fourchy, 51 La. Ann. 228, 25 So. 109; State v. Jones, 51 La. Ann. 103, 24 So. 594; State v. Johnson, 48 La. Ann. 87, 19 So. 213; State v. Jefferson, 43 La. Ann. 1001, 10 So. 199; State v. Meche, 114 La. 231, 38 So. 152; State v. Clayton, 113 La. 782, 37 So. 754; State v. Young, 114 La. 686, 38 So. 517.

[7] Bill No. 7 was reserved to an order of the court directing that Felix Constanza be separated from the other witnesses.

Counsel for defendants had asked for a severance of all the witnesses, and the court ordered the severance. After Constanza had testified, the district attorney asked that he be separated from all of the witnesses. The court so ordered, and this witness was escorted by a deputy sheriff to a place different from that occupied by the other witnesses. The judge's per curiam to this bill is as follows:

"The court, at the request of the state, directed the witness Constanza to be separated from the other witnesses, those who had testified and those who had not yet been called to the stand. This is a matter of discretion with the court, and was in keeping with the request of counsel for defendants for a separation of all of the witnesses at the beginning of the trial. He was not under arrest, nor held incommunicado at any time, and, as the court stated, the sheriff is merely showing a witness to a place, to be kept separated from the other witnesses, but not under the orders of the sheriff."

Orders to separate witnesses, and their enforcement, are generally addressed to the sound discretion of the court. State v. Hagan, 45 La. Ann. 839, 12 So. 929.

[8] The granting or refusing of a motion for the separation or sequestration of witnesses is within the sound discretion of the trial judge. State v. Daniels, 122 La. 261, 47 So. 599.

Bill No. 8 was reserved to the overruling of a motion for a new trial. Eight reasons are alleged in the motion why a new trial should be granted. The first is that the verdict of the jury is contrary to the law and the evidence, and that the jury failed to give the accused the benefit of a reasonable doubt.

[9, 10] The other grounds urged are the same as are urged in the several bills of exception which we have already considered and disposed of. The mere allegation that the verdict is contrary to the law and the evidence presents nothing for review, and the allegation that the jury failed to give the accused the benefit of a reasonable doubt is a

question of fact of which, under the Constitution of the state, the jury are the sole judges.

For these reasons the verdict of the jury and sentence of the court are affirmed.

## On Rehearing.

THOMPSON, J. In discussing the errors complained of in the several bills of exception contained in the transcript the court in the opinion handed down made reference to certain facts stated in the per curiams of the trial judge. It developed on an application for rehearing that the per curiams were not properly before the court, and hence ought not to have been considered at all.

The per curiams were prepared and signed by the trial judge long after the appeal had been granted and after the transcript had been filed in this court, and were sent up in response to a writ of certiorari.

[11, 12] It is quite clear that the trial judge was without jurisdiction of the case at the time the per curiams were prepared and signed, and it is equally clear that this court was without authority to consider or to act on them.

The certiorari from this court issued improvidently and on a misapprehension of the facts. The application for certiorari was made by the district attorney, and it was issued by the Chief Justice on the hypothesis that the per curiams had been timely prepared and signed and were omitted from the original transcript through error or mistake.

The district attorney took no part in the trial below, and was not cognizant of what had transpired in that court; hence no criticism can attach to him for making the application for certiorari and none, of course, to the Chief Justice, who signed the order on the faith of the application.

We have carefully reconsidered the case solely on the bills of exception with the evidence thereto attached as brought up in the original transcript, and we are unable to discover any sufficient reason for changing our original opinion and decree.

All reference to the per curiams may be eliminated entirely from the opinion, and our conclusion on each bill remains unshaken. We might mention, however, the fact that in disposing of the eight bills of exception no reference whatever was made in the opinion to the per curiams to bills of exception 3, 5, and 8, and with respect to the per curiams to bills of exception 1, 2, 4, and 7, all of the material facts stated in the per curiams are to be found in the bills themselves or in the testimony attached to them and to bill No. 8, which was reserved to the denial of the motion for a new trial.

There are some facts stated in the ruling on bill No. 6 which were obtained from the per curiam to that bill, but such facts were not controlling, and may be wholly ignored and entirely disregarded without affecting our conclusion on bill No. 6 in the least.

The only reference to facts derived from the per curiam to bill No. 6, and not otherwise appearing from the record, is contained in the statement that the correct residence and place of abode was given in the subpœna for certain witnesses which the court on motion of the district attorney had ordered issued instanter, and that the sheriff's return thereon showed that the witnesses could not be found.

It appears from this bill that Mrs. D'Asaro, a witness for the state, and who was the wife of the victim of the crime charged against the defendants, had testified on cross-examination, in answer to a question propounded by defendants' counsel, that Felix Constanza, the father of one of the defendants (Sam Constanza), had told her that his son had committed the robbery. Felix Constanza was placed on the stand as a witness for the defendant, and on direct examination denied that he had made such a state-

ment to Mrs. D'Asaro. On cross-examination of Felix Constanza the state, for the purpose of impeaching his testimony, and for that purpose only, asked him several times if he had visited the D'Asaros' house after the crime, and if he had not sent certain parties, naming them, to D'Asaro on behalf and in the interest of his son.

This was objected to for the reason that the evidence sought to be elicited was not connected with or incidental to any matters brought out on direct examination; that whatever the witness did out of the presence and hearing of the witness' son was not admissible against the son. The court ruled that the testimony was not admissible, unless for testing the credibility of the witness. Whereupon the district attorney stated that that was the purpose of the question. The court permitted the question for that purpose, and so informed the jury.

[13] The counsel then made the further objection that the matter inquired about was collateral to the issue and should not be gone into at that time. This objection was overruled. The ruling was entirely correct. As we have stated, the court had permitted the question as tending to test the credibility of the witness, and had so instructed the jury. This limitation unquestionably stripped the matter of any probative force and effect as independent and collateral proof.

Moreover, the defendants themselves had opened up the inquiry by asking Mrs. D'Asaro who had told her that it was Felix Constanza's son who had committed the robbery; and in response to that question she had said that it was his father who had told her.

[14] The defendants cannot be heard to complain that questions, having for their sole object the impeachment of their witness, tendered a collateral issue, when they had themselves provoked that inquiry.

Aside from this, however, the witness denied making the statement imputed to him by Mrs. D'Asaro, and he denied sending any persons to the D'Asaro house. No further attempt was made by the state to impeach the witness Felix Constanza in the matter involved, and the jury was left to determine the credibility of the two conflicting witnesses and the effect, if any, to be given the statement of Mrs. D'Asaro if her statement were accepted as true.

In the same bill of exception (6) the following question was asked Felix Constanza by the district attorney.

"Didn't you tell them to tell Mr. D'Asaro this: that on the night of the hold-up the D'Asaros were very much excited and thought they recognized the boys, and that the excitement had passed, and after thinking the matter over you believed they had made a mistake, and in consideration of this you offered to return the money D'Asaro had been put to for legal services?"

By Carbajal and Burke: "We object to that line of questioning as unfair."

[15] The objection was overruled, but the particular question was not answered by the witness. We are unable to appreciate any harmful effect resulting from an unanswered question.

[16] It is contended, however, that it was unfair and prejudicial to the accused for the state to attribute to a witness for the accused certain statements or acts of the witness, which were within themselves highly prejudicial to the accused, for the purpose of impeaching the witness, and then fail to produce the witnesses to sustain the proffered impeachment or to account for the nonproduction of such witnesses.

The record shows that, immediately following the last-mentioned question, objection, and ruling, the court, on motion of the district attorney, ordered instanter subpœna to issue for two of the witnesses by whom the state expected to contradict the witness Felix Constanza.

The record is silent, however, as to any reference to the matter after the incident re-

ferred to. There is nothing before the court to show that the impeaching witnesses were or were not sworn in the case. We assume, however, from statements of counsel that the witnesses were not sworn.

No reference as to the failure of the district attorney to place the witnesses on the stand appears to have been made in the argument to the jury by either the counsel for the state or those of the defense, and we are not advised that the court referred to the matter in its general charge.

We must assume that the court would have instructed the jury properly on the matter if it had been requested by counsel to do so. If counsel had felt that their clients' interest had been greatly prejudiced before the jury by the action of the district attorney in not producing the witnesses and in not giving any explanation for not producing them, after he had cross-examined Felix Constanza with that purpose in view, they, it seems to us, should have called the attention of the jury to that fact and asked for appropriate instructions from the court. So far as the record shows they did neither.

On the showing made, the court would not be authorized to impute to the district attorney insincerity in his attempt to lay a foundation for the impeachment of defendants' witness and to say that the district attorney acted in bad faith, well knowing that he could not make good his attempt at impeachment. Nor are we warranted in assuming that the jury considered the matter or was influenced by it to the prejudice of the accused. We would be far from holding that an intelligent and unbiased jury accepted as damaging evidence against an accused facts stated as a basis for impeaching a witness of the accused, in the face of the denial of such facts by the witness and where no proof had been offered by the state to sustain the attempted impeachment.

Counsel for defendants cite, in support of their contention that the conduct of the district attorney was unfair and prejudicial to the interest of the defendants, the case of State v. Guagliardo, 146 La. 950, 84 So. 216. The facts of that case are dissimilar entirely to the facts of this case, and the ruling of the court cannot justify a reversal of the verdict of the jury in the instant case.

In the cited case one of the accused was a witness in his own behalf, and on cross-examination the district attorney asked him if he had not made statements to a number of designated persons, which, if true, would have been extremely damaging to the accused, declaring at the time that it was his purpose to impeach the testimony of the accused if he denied the facts imputed to him in the questions. As an illustration of the action of the district attorney we quote what he said to the accused as a witness in putting the question for the basis of impeachment:

"Now, I wish you to think again. I am going to give you a chance. I am placing you on your guard, and I intend to impeach your testimony."

The impeaching witnesses were not called to the stand, and no attempt was made to contradict the testimony given by the accused. But in the argument counsel for defendants asked the district attorney why he had not called the witnesses to the stand to impeach the defendants, and his reply was that it was not necessary to put witnesses on the stand to impeach Frank Jordano, "because he is a perjurer, a self-confessed perjurer."

No such case is presented here. The witness whom it was sought to impeach was not the accused, but was a witness placed on the stand by the accused for the purpose of denying a statement imputed to the witness by a state witness on cross-examination to the effect that the defendant witness had stated

to the state witness that it was his son who had committed the robbery.

The district attorney did not warn the witness in presence of the jury that he intended to impeach the witness, but, when objection was made, the district attorney merely stated, "That is the purpose of the question," when the court ruled that the question was not permissible unless it tended to test the credibility of the witness.

A comparison of the case cited with the instant case discloses very little analogy, and certainly furnishes no precedent or authority for setting aside the verdict in this case.

The decree heretofore entered is reinstated and made final.

O'NIELL, C. J., concurs in the result.