tury Digest, vol. 27, § 256, p. 257. The intent is descriptive, and must appear in the indictment. Bishop's New Cr. Pr. p. 621. Any intent which the statute creating an offense expressly mentions, must be averred—"a rule believed to be without exception." Bishop's New Cr. Pr. p. 524. See Knobloch's Digest of Criminal Law, pp. 232, 233, 236.

If any one of the ingredients is omitted, it is ground for a motion in arrest of judgment. Knobloch, p. 235. Criminal intent omitted, fatal. State v. Read, 6 La. Ann. 227; State v. Durbin, 20 La. Ann. 408.

No alternative is left; the information is null, and it is so held.

It is therefore ordered, adjudged, and decreed that the sentence in this case and the judgment are null and void. The rule is made absolute.

---

(47 South. 878.)

No. 17,215.

STATE v. HIGH.

(Nov. 16, 1908. Rehearing Denied Dec. 14, 1908).

1. CRIMINAL LAW (§ 665*)—TRIAL — EXCLUSION OF WITNESS—PERMITTING A WITNESS TO REMAIN IN COURT.

When the trial judge thinks for good reasons that an exception should be made, and a witness who had been placed under the rule permitted to return to the courtroom during the trial, it affords no ground to set aside the verdict. Placing witnesses under the rule cannot be obtained as a matter of right.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1549–1566½; Dec. Dig. § 665.*]

2. CRIMINAL LAW (§ 1036*)—OBJECTIONS TO EVIDENCE — WAIVER — OBJECTION NOT TIMELY.

The witness' testimony not having been objected to in time, as stated by the district court, its admission affords no good ground on appeal. The trial court, none the less, instructed the jury to give it no consideration, as it was hearsay.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1036.*]

3. WITNESSES (§ 236*)—EXAMINATION—QUESTIONS IN GENERAL—TESTIMONY PROPERLY EXCLUDED AS IRRELEVANT.

A general question which was not propounded to elicit a relevant answer was properly excluded by the court.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 817–826; Dec. Dig. § 236.*]

4. CRIMINAL LAW (§ 338*) — EVIDENCE — ADMISSIBILITY—MENTION OF NAMES PROPERLY EXCLUDED.

However disreputable and lost in character a person may be, the name is not to be brought in as one who associated with deceased or defendant, unless connected in some way with the crime charged. As low as a person may be, she has a right to be let alone if she has violated no law.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 338.*]

5. CRIMINAL LAW (§ 413*) — SELF-SERVING DECLARATION—REQUEST.

The testimony was self-serving. It was a request of the defendant which he desired to prove in matter of his own defense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 928–935; Dec. Dig. § 413.*]

6. CRIMINAL LAW (§ 719*)—TRIAL—REMARKS OF COUNSEL.

The solemn and deliberate duty of jurors should not be disturbed by remarks of counsel not sustained by the evidence in the record.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1669; Dec. Dig. § 719.*]

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Andrew Jackson Murff, Judge.

Henry High was convicted of manslaughter, and he appeals. Reversed and remanded.

Cal. Dial Hicks and William Alexander Mabry, for appellant. Walter Guion, Atty. Gen., and James Martin Foster, Dist. Atty. (Ruffin Golson Pleasant and William Hampton Scheen, of counsel), for the State.

BREAUX, C. J. The defendant and William Askew, Lela Trilley, and Emma Montgomery were charged with having murdered George Hanson in the town of Shreveport, on the morning of the 2d of October, 1907.

They were indicted for murder, pleaded, and in February, 1908, they were placed on their trial.

William Askew and Lela Trilley were acquitted.

The jury failed to agree as to Henry High and Emma Montgomery.

A mistrial was ordered.

The last-named defendants, Henry High and Emma Montgomery, were again placed on trial in June, 1908.

Emma Montgomery was acquitted.

The jury found Henry High guilty of manslaughter.

The court sentenced him to serve 10 years in the penitentiary.

He appeals.

The case is before us on a number of bills of exceptions.

1. The ruling of the court in permitting a witness for the state to testify, over defendant's objection, gave rise to the stated ground: That during the trial this witness entered the courtroom, took his seat near the defendant, High, and, after having heard the evidence of several witnesses, he was called to the witness stand.

An order to separate the witnesses had been given by the court, and this witness as well as others had been placed under the rule.

The contention of the defense on this point is that, while it was discretionary with the court to place witnesses under the rule, having issued such an order, the court was powerless to rescind it without the consent of the defendant.

But the court overruled the objection and permitted this witness to testify.

The reason given for the ruling is that this witness was a sworn officer of the city police force. The sheriff had informed the court that his presence was needed at that time in the courtroom to guard the prisoners, of which fact the court was satisfied.

The point regarding the sequestering of witnesses is not new. Under repeated decisions, the matter of sequestering witnesses is largely left to the discretion of the court, a discretion which the appellate court would hardly be justified to find fault with when it does not appear that the ruling is prejudicial.

The defendant cannot claim that the witnesses should be sequestered as a right. When the trial court thinks that an exception can well be made as to one of the witnesses for good reason, the cause of defendant will not from that fact alone be considered prejudiced.

The ruling affords no good ground of complaint.

The authorities sustain the court a qua. State v. Forbes, 111 La. 473, 35 South. 710.

2. The contention of the defense is that the court erred in the ruling which resulted, as defendant avers, in admitting hearsay evidence greatly prejudicial to him.

The grounds are, on the part of the defense, that the state's cause turned upon circumstantial evidence, and the supposed motive was jealousy; to permit a witness to testify "that deceased was afraid of Henry High" was prejudicial to him. The witness against whose evidence the objection was directed added that he was well aware of this statement, because he had received it from the deceased himself.

The court overruled the objection, because, as the court states, the witness had already answered before the objection was made, and that he instructed the jury to pay no regard to this statement, as it was mere hearsay and not to be considered at all.

The counsel for the defense in arguing this point stated that the court unquestionably was absolutely sincere, but they added that he was mistaken; that he had committed error. Counsel for the defense have pressed this point upon our attention. They insist that there was an error committed.

This, for all we know, may be, but the rule is invariable, and one to which we think

we must adhere: the statement of the trial court must be accepted as correct. That has been so often decided that it admits of no possible rule to the contrary. However insistent counsel may be, the regular practice is to the contrary. The purpose is to put an end to all possible difference between counsel and the court. Otherwise, they would at times be drawn in a wrangle to the annoyance of both the court of original jurisdiction and the appellate court.

We can think of no good reason to make a change in this rule.

3. The next point arose from the fact that the defendant desired to prove by a witness, who was testifying on the stand during the trial, that George Hanson, the deceased, visited women of questionable character. This witness was asked by counsel for the defense to state who they were. The objection of the state was that the testimony was not relevant.

The defendant sought to meet this by stating, as will be seen by the following (which we quote literally, because it is of some importance):

"That the supposed motive of Henry High, the defendant, in killing George Hanson was jealousy, and this evidence was sought to the end of showing that others besides High would have a motive in killing Hanson."

The court ruled on this point that the question was too general; that if counsel had named a particular person and given their reasons for seeking the information it would have been permissible; but to make a witness name all the women Hanson and he, the witness, had ever been with was too broad and irrelevant, and was further objectionable and inadmissible because the witness could not be compelled to bring in the names of women who had naught to do with the case.

There can be no possible reasonable objection to the court's ruling.

Counsel sought to bring out the motive, and gave good reason, perhaps, in that respect. But be that as it may, when the question propounded is taken as a whole, we must agree with the court that others could not be thus brought in the case if they were not connected with it in any manner.

The defense disclaimed that it was their intention to go muck-raking against the woman alluded to.

Of this we make no question. At the same time, we must hold, that, under the circumstances, the question, "Who were these women?" was too general and irrelevant to be admitted, even although the characters of these women were questionable. They had a right to their confidence, however low and degraded they may have been.

4. The next point raised is that the mother of the deceased was permitted to testify for the state, although she had been a spectator all during the progress of the trial, and although the witnesses had been put under the rule; that Mrs. Hanson was dressed in deep mourning; that her appearance in court when she should have been with the other witnesses was calculated to prejudice the minds of the jurors against the defendant, and caused them to think that some one should be punished for depriving this mother of her beloved son, whether the evidence fully justified their verdict in this case or not.

The counsel for the defense from their standpoint argue this proposition at length, and consistently and logically urge that she should not have been permitted to testify.

But it has been decided in a number of cases that, even where a witness remains in court in violation of the order of the court to separate the witnesses, it is within the discretion of the court whether he should be examined. State v. Gore, 15 La. Ann. 80; State v. Jones, 47 La. Ann. 1532, 18 South. 515; State v. Hagan, 45 La. Ann. 839, 12 South. 929; State v. Cole, 38 La. Ann. 843; State v. Watson, 36 La. Ann. 148.

The witness in this case had not violated the order of the court. It was within the discretion of the judge to determine whether or not she should be examined as a witness. State v. Revells, 34 La. Ann. 383; 44 Am. Rep. 436.

Furthermore, this witness knew nothing of the alleged crime. She was called on as a witness to prove something in regard to the age of her son.

It has often been held that jurors must be given some credit for intelligence. From that point of view it cannot well be said or inferred that they were prejudiced by the fact that the mother was present in the courtroom while one who was charged with having murdered her son was on trial. A trial by jury would be subject to very serious reproach and severe criticism, if jurors were so weak as to be influenced in that way.

5. Another point:

The accused while in prison sent for a lieutenant of the police of the city.

It is said that he is a good officer and an excellent detective.

Accused said to him that he wanted him to apply himself to find the one who had committed the murder in this case. To this request, the officer replied:

"Look out, Henry, do you know what that might mean? Do you know what that might lead to?"

The defendant replied:

"Find the one who killed Hanson. I don't care where it leads to."

The defense's contention is that, the state's case being dependent upon circumstantial evidence, the defendant should have been permitted to show that he stood ready to find the guilty person; that this examination should have been permitted, as it was important and vital; that his examination would have been detrimental to the cause of the state; that the defense would have proved that this detective had investigated the Hanson killing, and had told his chief that High was not the murderer.

This testimony sought was self-serving; it does not show that this witness knew of any fact. What this witness said to his chief of police was not admissible. He was not questioned as to what he knew of the case; but it was attempted in a general way to prove, as we take it, his impressions—his conclusions. There was no question excluded propounded with the view of eliciting facts and admissible circumstances from him.

Although the defendant may have been convicted on circumstantial evidence, it would not have justified the court in disregarding the rules of evidence and in admitting the testimony of witnesses regarding their inferences and conjectures.

6. One of the bills of exceptions was taken by the defense to the remarks of one of the assistant attorneys of the prosecuting officer; it related to a skirt which counsel said had blood on it and which had been introduced in the evidence on the former trial. It was referred to as if in evidence in the second trial, the one before us for review on appeal.

There had been no evidence of a bloody skirt introduced on this trial, and the complaint was that counsel overlooked the record and went beyond. Thereupon the court instructed the counsel to confine his remarks to the facts shown by the record, and instructed the jury not to consider the remarks of counsel regarding the matter out of the record.

This bill contains several exceptions, all on the ground that this counsel was not within the record; that he had not followed the court's admonition to adhere to the record.

Same counsel went on further and stated to the jury that they saw how hard it was to get a jury in the case; that the citizens within the community had their minds made up or their opinions formed.

The court sustained the objection, but did not instruct the jury.

It appears that counsel, over objection, said that defendant's wife had divorced him, and that he is now living in concubinage with the other defendant, Ella Montgomery, and was on terms of illicit intimacy with two married women in West Shreveport.

Counsel for the defense stated, as part of the bill of exceptions, that the testimony relating to these two married women connected their names with the deceased and not with the defendant.

The court stated that there was some dispute between counsel for plaintiff and counsel for the defendant about this evidence. He stated to the jury that they would know who was correct in the matter.

Another objection was to the remarks of the attorney in stating that on the former trial the jury stood seven for conviction. Again the counsel was admonished not to go beyond the record.

In regard to the opinions of the community, the court, although it admonished counsel, gave no instructions, and, in regard to the names of the two married women alluded to above, the court instructed the jury that they must be the judges as to whether their names are connected with High or Hanson.

The act of which the bloody skirt was evidence, whatever it was, was one, we infer from the statement, that the defendant sought to conceal.

The court's instructions in this one instance to disregard the statement was perhaps sufficient; but a number of remarks, over objection, requiring counter instructions, do not recommend themselves for sanction by the court, especially when they have the appearance of being prejudicial.

The following from Bishop commends itself:

"If from the nature of the case the interference by the court does not probably have the effect to right the minds of the jurors, and the defendant is convicted, there may be a new trial." 1 Bishop, New Criminal Procedure, par. 975, p. 592.

The reference, by able counsel in the earnestness of argument, to the seven jurors who were in favor of conviction in a former trial, may have had an influence, and the difficulty in impaneling a jury, to which attention was called. The made-up opinion of the public mind, and the other remarks made despite the instructions, may have had greater influence than the law contemplates in criminal cases of the gravity of the one before us for review.

This court has decided that there are instructions by the trial judge that cannot cure the remarks made by the prosecuting officer. They are when remarks are made which are calculated to give rise to race prejudice; when the prosecuting officer refers to the silence of the accused, who had a right to testify.

We are of opinion that repeated remarks requiring counter instructions come within the rule, particularly in a case in which the defendants are prosecuted for murder.

The case of State v. Easley, 118 La. 690, 43 South. 279, does not support the opinion that the prosecuting officer can go out of the record a number of times after he had been requested not to do so.

It is true that it is only in extreme cases that a verdict will be set aside on account of improper remarks made by the prosecuting officer.

We are of opinion that this is an extreme case, and that for that reason it falls within the rule laid down in State v. Robinson, 112 La. 939, 36 South. 811, persuasively sustained in Heller v. People, 22 Colo. 11, 43 Pac. 124; State v. Greenleaf, 71 N. H. 606, 54 Atl. 38; Laubach v. State, 12 Tex. Cr. R. 583.

To conclude on this point, the decision of which carries with it a remanding of the case: Repeated arguments not within the

record are not always cured by court's admonition. Sacket (3d Ed.) 241.

Repeated remarks ultra the evidence that have no foundation in the evidence, having a tendency to be prejudicial, may be cause for reversal and remanding the case ibidem.

We have considered other objections urged by the defense as set forth in their different bills of exceptions. We have not found any irregularity for which the verdict should be canceled and a new trial granted. We have found only one error, and on that ground we are constrained in our opinion to remand the case for a new trial.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from are avoided, annulled, and reversed. The case is remanded to be proceeded with anew against the appellant.