45 So.2d 617

**STATE v. SMITH.**

No. 39546.

March 20, 1950.

Richard B. Williams, John Makar, Patrick C. Murphy, G. F. Thomas, Jr., Julian E. Bailes, Natchitoches, for defendant-appellant.

Bolivar E. Kemp, Jr., Attorney General, M. E. Culligan, Ass't Attorney General, H. L. Hughes, District Attorney, Natchitoches, for appellee.

PONDER, Justice.

The defendant was indicted, tried and convicted for the crime of murder and sentenced to be electrocuted. He has appealed from the conviction and sentence.

From our examination of the fifty-two bills of exceptions presented on this appeal, we find that many of them are without merit. However, some of them have given us grave concern.

Bill of exception No. 6 was taken to the statement of the district attorney made while a juror was being examined, after three jurors had already been selected, viz: that the defendant is not entitled to extenuating circumstances. Counsel objected to the statement at the time it was made and moved for a mistrial and a discharge of the jurors. The court overruled the objection.

Bill of exception No. 7 was taken to a question propounded by the district attorney to a prospective juror after six jurors had been selected, viz: "You would not inflict capital punishment, even if he raped your own daughter?" Counsel objected and moved for a mistrial and the discharge of the jurors. This objection was overruled.

Bill of exception No. 8 was taken to a question propounded by the district attorney to a prospective juror, after nine jurors had been selected, to determine whether the juror had conscientious scruples against capital punishment, "even in the case of

rape." Counsel objected to this question and moved for a mistrial and the discharge of the jurors. This objection was overruled.

The trial judge in his per curiam states that the State had difficulty in obtaining sufficient jurors because so many had disqualified themselves by reason of their conscientious scruples against capital punishment and it was more or less under these exasperating circumstances that the remarks of the district attorney were excepted to by counsel for the defense. The trial judge states that it was his opinion at the time and now that the remarks were not prejudicial.

The remark of the district attorney that the accused was not entitled to the benefit of extenuating circumstances was improper and prejudicial to the defendant. The objection should have been sustained and the jury instructed to disregard the remark because the jury alone has the right to determine whether or not there are extenuating circumstances and the effect to be given them. They might differ as to the kind or character of circumstances which would entitle a defendant to a qualified verdict. State v. Henry, 197 La. 999, 3 So.2d 104.

Counsel contends that the questions propounded by the district attorney to the prospective jurors were prejudicial to the defendant, who was being tried for murder, because they left the impression that the defendant was guilty of a sex crime and should not be released upon the public.

The defendant was twenty years old and single at the time the crime was committed. It appears that the deceased was a married woman and several years older than the defendant. We gather from the opening statement of the district attorney and the written confessions embodied in the record that the defendant and the deceased had been having improper relations in the past and that they went a mile and a half below town to a thickly wooded section for such purpose. It was while they were at this place that the accused killed the deceased by cutting her throat. According to the written confessions, the defendant did not know why he killed her, but he made statements to Deputy Sheriff Black that he was paying attention to a cousin of the deceased and had previously asked the brother of the deceased to make her quit running after him because she was going to get him in trouble. He stated that her husband had already shot, or shot at, some man about her and that he wanted her to stop running after him because it was interfering with his attentions to her cousin. It does not appear there was any evidence produced or even contention made that the defendant raped the deceased.

The questions propounded to the jurors were improper because they were not pertinent to determine the qualification of a juror to serve on a trial for murder. Article 357 of the Code of Criminal Procedure.

Moreover, hypothetical questions and questions of law are not permitted in the examination of jurors which call for a prejudgment of any supposed case on the facts. 50 C.J.S., Juries, § 275, p. 1042; State v. Henry, 197 La. 999, 3 So.2d 104; State v. Thornhill, 188 La. 762, 178 So. 343. See also 31 Am.Juris., page 670, para. 154; State v. Plummer, 153 La. 730, 96 So. 548 and State v. Scott, 198 La. 162, 3 So.2d 545.

The authority cited by the State, wherein the juror was permitted to state whether or not he opposed capital punishment in a "case of cold blooded murder", is not in point because the question was propounded to ascertain the qualification of the juror in the trial of a murder case and the examination was limited to that purpose.

These bills of exceptions are primarily levelled at the effect that the statements had on the jurors already selected. We cannot agree with the trial judge that the statements and questions propounded to the jurors were not prejudicial. His refusal to sustain the objections and his failure to instruct the jurors to disregard the statement and questions propounded was prejudicial to the defendant in his trial.

Bill of exception No. 5 is levelled at the ruling of the trial court refusing to place Deputy Sheriff Black under the rule when a severance of witnesses had been granted. Counsel concedes that the trial judge has a discretion in excusing deputies from the rule but contends that the sheriff had four other deputies available who had been placed under the rule. He contends that the court abused its discretion by permitting Black to remain in the court room because he was the principal officer who testified to both confessions, the reaction of the defendant while in jail, and as to the motive expressed by the defendant for the crime, and made statements regarding the sanity of the accused, and endeavored on his own volition to fill in the gaps left by the other witnesses for the State. He cites Article 371, Code of Criminal Procedure and State v. Carter, 206 La. 181, 19 So.2d 41.

The trial judge in his per curiam states that Black was the oldest and most experienced deputy and useful in the court room in helping with the essential mechanics of the trial and maintaining order because curious crowds had jammed the major portion of the court room.

The trial court is vested with discretion as to what officers may be excused from the rule, and it is only when this discretion is arbitrarily and unreasonably exercised to the prejudicial injury of the defendant in obtaining a fair and impartial trial that this court would be warranted in setting aside a verdict. The essence of the Carter case was whether or not the accused shot the deputies without provocation or in self defense. The refusal of the trial judge to place these three witnesses under the rule and permitting them to remain in the court room, for all practical purposes, deprived the accused of the right to cross-examine

them. The trial judge did not cite any reason for his refusal to place them under the rule but took the position that the law granted him the discretion to do so. In the present case the trial judge states that Black was necessary to maintain order in court. It does not appear that Black had any personal interest in the outcome of the case or had received injury at the hands of the accused. Under the circumstances, we cannot say that the trial judge abused his discretion in excusing this officer from the rule.

The exception to the overruling of the motion for a new trial has given us some concern.

◾ It is alleged in the motion for a new trial that the district attorney in his final address to the jury stated: "Of course you can sentence the defendant to life imprisonment (at which time the district attorney shrugged his shoulders in a gesture of disgust said further) but you all know what life imprisonment in Louisiana means—it means that he (pointing to the defendant) would go down to the 'pen' for a while and be out in eight or ten years and be back up here." "If I let a leopard loose on the streets of Natchitoches, and it kills someone, who is to blame—the leopard or I?" It is alleged that this remark was taken word for word from an article in an issue of the Saturday Evening Post entitled "What Can We Do about Sex Crimes" which was displayed on the table of the district attorney in such a manner that the jury could not avoid being aware of the article and its title. It is further alleged that the attorneys for the State used this article in questioning the witnesses and that this conduct on their part, where the question of a sex crime was not at issue, was a deliberate attempt upon the part of the attorneys for the State to appeal to the prejudices and sympathies of the jury.

The trial judge in his per curiam states, without commenting on the truth of the allegations, that no objection was made nor bill reserved to the alleged conduct and statements at the time they were made and that they cannot serve as a basis for a new trial. State v. Willson, 215 La. 507, 41 So.2d 69.

If the allegations were true and the objections timely made this undoubtedly would have constituted reversible error. However, under the holding in the Willson case we cannot consider the alleged conduct and the alleged statements of the district attorney because they were not timely objected to.

◾ It is alleged in the motion for a new trial that the rights of the accused were materially affected and prejudiced by the court's permitting spectators to gather around and crowd against defense in such numbers and under such conditions as to actually hide the defendant from the witnesses in the witness stand and making it necessary for the witnesses to stand in order to see or identify the accused; that

these spectators had overcrowded the court to the extent that the aisles, doors and passage ways were fully occupied and that the only available space was a small area between the counsel table and the jury box. It is alleged that some of the spectators were standing on seats, boxes and in the windows and were causing considerable disturbance from time to time; that the judge never closed the court room doors; that people were gathered in the doorway and hall adjoining the jury box and had to be quieted down by the judge on several occasions; that the spectators crowded around the defense to the extent that free movement and consultation on the part of the defense was prevented.

We find photographs in the record showing the defendant and jury were surrounded by spectators. People were back of the judge's seat, on both sides of the jury, and all around counsel. The photographs show a complete congestion of people inside the rail.

The trial judge states in his per curiam that the court room was crowded but it was a curious and not a hostile crowd. He states that the attached picture was made while the court was thanking the jury for their three-day service and that the crowd in the door, around the witness stand and between the judge and jury had drifted in during the deliberation of the jury. He states that the man sitting with his back to the jury box wasn't there during the trial and that the witnesses were not out of the sight of the accused or he of them. He states that no objection was made to the conditions under which the trial was held and that it is too late to urge it now.

Counsel for the defendant relies on the holding in the case of State v. Henry, 196 La. 217, 198 So. 910. In the Henry case timely objection was made to the overcrowded condition of the court room during the course of the trial. Since we have arrived at the conclusion that a new trial will have to be granted because of the prejudicial errors reflected in bills of exceptions Nos. 6, 7 and 8, it is not necessary for us to determine whether the question of the crowded court room could be timely raised in a motion for a new trial. We have recited these allegations in the motion for a new trial in order to point out that such conditions should not be permitted. We express no opinion as to whether it is the duty of the court itself to see that these conditions do not exist irrespective of timely objection.

█ It appears from the allegations in the motion for a new trial and the testimony taken thereon that the jury was housed on the two nights during the trial at a fishing camp on Black Lake, owned by one of the jurors, located eighteen miles from the court house. On the first night the nine jurors selected were carried by bus some twenty-five miles by road to the camp. Two deputy sheriffs were in charge of the jurors and the bus was operated by a person who was not an officer or in any

way connected with the trial. There seem to have been several buildings at this camp but from the evidence of the two officers it appears that no one came in contact with the jurors and they were housed in one of the buildings in this camp in four or five rooms opening into a common hallway. On the second night the twelve jurors were carried by bus to the camp and one juror and a deputy separated from the others and went some seventy yards to the lake and fished for a few minutes until the other deputy called the juror back. It seems that the other jurors at that time were shaving and bathing their faces at a place near the camp building.

From the per curiam of the trial judge, it seems that the sheriff informed him on the first day of the trial that accommodations could not be obtained in the hotel for the jury except separate rooms. He was of the opinion that it would be better under the circumstances to house the jury at one of the camps on Black Lake.

In view of our previous conclusions, it is not necessary to pass on this question. However, in cases where the extreme penalty of the law can be imposed, every precaution should be taken to prevent any access to the jury and a jury should not be allowed to separate.

No purpose could be gained by a discussion of the other bills of exceptions.

For the reasons assigned, the conviction and sentence are set aside and the case is remanded to the district court for a new trial.

HAWTHORNE, J., dissents.

HAWTHORNE, Justice.

I respectfully dissent from the ruling on bills numbered 6, 7, and 8, because I do not think that the authorities cited in the majority opinion are pertinent or controlling. In none of the cases cited was the ruling of the court based on the fact that an improper question was asked in the presence of jurors already selected. In the principal case relied upon, State v. Henry, 197 La. 999, 3 So.2d 104, the trial judge refused to sustain objections to improper questions, all peremptory challenges were exhausted, and the defense was compelled to accept jurors who stated that, if they were convinced from the evidence that the accused was guilty and if in their opinion there were no mitigating circumstances, they would render a verdict carrying with it the death penalty.

As I understand the record in the instant case, none of the prospective jurors to whom the questions were propounded was challenged for cause by the defense, none of them served on the jury, and the defense did not exhaust its peremptory challenges. Conceding that the question was improper examination of a prospective juror on his voir dire, I fail to understand how the defense was prejudiced under the above facts and circumstances.

I respectfully dissent.