SIMON, Justice.
 

 The defendant, Walter Palmer, has appealed to this Court from his conviction and sentence to death for the murder of Merwin Kendricks, and relies upon twelve bills of exception for the annullment of the verdict and sentence.
 

 Bills of Exception Nos. 1, 2 and 3 were reserved to the ruling of the Court on the voir dire examination of three prospective jurors, in which alleged prejudicial questions and statements were made by the district attorney to them, in the presence of the jury panel or venire present in the courtroom, and the refusal of the trial judge to order a mistrial.
 

 Over objection of counsel for the defendant, the district attorney was permitted to state to the three prospective jurors that the defendant was indicted by the grand jury for the murder of Merwin Kendricks while engaged in the perpetration of aggravated rape on Lillie May Hemphill Ford, all constituting one series of acts. The State guardedly informed these jurors, however, that the defendant was only being tried for the crime of murder. Counsel for the defense argue that the court erred in permitting the district attorney to inform these prospective jurors that it expected to prove the commission of the crime of murder and that of aggravated rape; that the crimes of murder and aggravated rape are separate and distinct offenses, and that reference to a crime, other than that charged, was highly prejudicial and improper and could serve no. other purpose than being inflammatory and creating the impression that the defendant was guilty of a sex crime, in violation of his constitutional rights guaranteeing a fair and impartial trial.
 

 LSA-Revised Statutes 14:30 defines murder as the killing of a human being “(1) When the offender has a specific intent to kill or to inflict great bodily harm; or (2) When the offender is engaged in the perpetration or attempted perpetration of * * aggravated rape, * * * even though he had no intent to kill.”
 

 The pertinent portion of the per curiam of the trial judge on these bills is as follows :
 

 “Bills of Exception Nos. 1, 2 and 3 were reserved to the court overruling an objection made to the questions of the district attorney to a prospective juror in explaining the crime of murder. A reference to these bills shows that the district attorney either read or quoted to them LSA-R.S. 14:30 defining the crime of murder * * * (as above quoted).
 

 “The court instructed the jury and prospective jurors that the defendant was being tried for the crime of murder. The objection was that there was reference to a crime
 
 *700
 
 ■other than that of murder, namely: the •crime of aggravated rape.
 

 “An indictment of murder was returned against the defendant who was being tried for the crime of murder only, and the jury was so instructed and the reference to aggravated rape was made by the district attorney only for the purpose of explaining the crime of murder under the aforesaid section.
 

 “This court was of the opinion that this was one series of events which were so ■closely associated and happened so close together that it would be impossible to segregate one from the other and that the murder was actually committed while in the perpetration of the crime of aggravated rape. The continuous series of evens (events) constituted the Res Gestae. * * *
 

 “The court, in its charge, so instructed the jury that murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery or simple robbery, even though he has no intent to kill, etc.”
 

 In the recent case of State v. Sears, 217 La. 47, 46 So.2d 34, 35, we had occasion to review the admissibility of evidence involving the commission of a separate crime ■other than that charged, and we referred exhaustively to the text-writers and our jurisprudence on the subject. In that case we approvingly quoted from 1 Wharton’s Criminal Evidence (llth ed.) the applicable rule, as follows:
 

 “ Tf evidence of the commission of another crime constitutes a part of the res gestae, it is admissible.’ Sec. 345, at p. 490.
 

 “ ‘The well-settled rule that evidence of collateral crimes cannot be introduced on the trial of a homicide charge is subject to an exception where the collateral crime precedes, or is contemporaneous with, or a part of, the charge on trial and the circumstances surrounding the collateral crime are essential to prove or to explain the crime charged. * * * ’ Sec. 346, p. 491.
 

 “ ‘When a collateral offense, or as it is sometimes called, an extraneous crime, forms part of the res gestae, evidence of it is admissible. As an isolated or disconnected fact, or where it is offered for the mere purpose of creating prejudice against or inviting sympathy for the accused, it is not relevant. When offered as an exception to the general rule of exclusion, it becomes a matter of substance with the charge on trial. * * *
 
 When two or more offenses are part of the same transaction, every element of the defendant’s conduct in that transaction may be shown for the purpose of illustrating the motive or intent in committing the act which is the basis of the charge. It is essentially res gestae.
 
 
 *702
 

 In one case, the court admitted testimony of a so-called second offense because it was so closely connected with the offense charged in time and circumstance as to constitute one and the same offense. If a second person is murdered as a part of the same transaction, evidence of the condition of the body of the second person killed is admissible in a prosectition for the murder of the first person.’
 
 Sec. 347, pp. 496, et seq.” (Italics ours.)
 

 In the Sears case we again approvingly-quoted from 2 Warren on Homicide (Perm. Ed.) as follows:
 

 “ ‘The general rule is that proof of distinct and independent offenses is not admissible on the trial of a person accused of a crime. This rule is founded in reason, for to allow the introduction of evidence of other and distinct offenses would confuse and mislead the jury as to the real issue to be determined, would prejudice the prisoner by irrelevant matter,* and require him to meet charges foreign to the specific offense laid to his charge.
 

 “ t
 
 * * *
 

 “ ‘There are exceptions to and modifications of this general rule, as where such evidence reasonably tends to show malice, intent, or motive on the part of a defendant with respect to the crime, or
 
 where the offense is so closely connected with the crime as to bring it within the rule of res gestae.
 
 * * *.
 

 “ ‘ * * *
 
 Evidence of other offenses consisting of an entire series of events, constituting but one transaction, is competent. On a trial for killing a certain person everything done at the time and every part of the affair, including defendant’s killing another person and shooting a third person, is admissible as explaining the nature and motive of the act for which the defendant is being tried. Where a killing is only one incident of an entire transaction, evidence of the whole transaction as an entirety, including what happened before and after the killing, is admissible.’
 
 Sec. 213, pp. 586, et seq.
 

 “ ‘ * * *
 
 To make one criminal act evidence of another a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish,
 
 or it must be necessary to identify the person of the actor by a connection which shows that he who-committed the one must have done the other. If the evidence be so dubious that the court does not clearly perceive the connection, the benefit of the doubt should be given the prisoner, instead of suffering the minds of the jurors to be prejudiced by an independent fact carrying with it no proper evidence of the particular guilt. * * *’ Sec. 215, p. 623.” (Italics ours.)
 

 
 *704
 
 As stated by Marr in his work on criminal jurisprudence of this State r
 
 [1]
 

 “ * * * When the scienter or quo animo forms an essential or indispensable part of the inquiry, testimony may be offered of such acts, conduct or declarations of accused as tend to establish such knowledge or intent, notwithstanding they may, in law, constitute a distinct offense. That is to say, to the general rule that no evidence can be given of felonies committed by accused other than that charged in the indictment there are exceptions.
 
 Thus, proof of a different crime from the one charged is admissible when both offenses are closely linked and constitute a part of the res gestae, or when it is pertinent and necessary to show motive or intent
 
 * * (Italics ours.)
 

 The authorities in support of these principles are legion in our jurisprudence, and it is now well settled that evidence or proof of the commission of a different or other crime than that charged is admissible when both offenses are closely linked and constitute a part of the res gestae. State v. Mulholland, 16 La.Ann. 376; State v. Deschamps, 42 La.Ann. 567, 7 So. 703, 21 Am.St.Rep. 392; State v. Donelon, 45 La. Ann. 744, 12 So. 922; State v. Anderson, 120 La. 331, 45 So. 267; State v. Blount, 124 La. 202, 50 So. 12; State v. Ard, 160 La. 906, 107 So. 617; State v. Cole, 161 La. 827, 109 So. 505; State v. Schmidt, 163 La. 512, 112 So. 400; State v. Norphlis, 165 La. 893, 116 So. 374; State v. Leslie, 167 La. 967, 120 So. 614; State v. Comeaux, 171 La. 327, 131 So. 36; State v. Jones, 174 La. 1074, 142 So. 693; State v. Bryan, 175 La. 422, 143 So. 362; State v. Mitchell, 181 La. 135, 158 So. 820; State v. Cupit, 189 La. 509, 179 So. 837; State v. Rives, 193 La. 186, 190 So. 374; State v. Guillory, supra.
 

 Under our LSA-Revised Statutes 15 :447:
 

 “Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.”
 

 LSA-Revised Statutes 15:448:
 

 “To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.”
 

 In State v. Leslie, supra [167 La. 967, 120 So. 615], we observed the following:
 

 “Where the commission of both offenses is closely linked or connected, evidence of the whole transaction is
 
 *706
 
 legal, although two distinct felonies had been committed. * * *
 
 ”
 

 In the instant case the record reveals that at the time of the alleged homicide the deceased and Mrs. Ford were seated in the front seat of a five-passenger coupe, parked on a country lane traversing a sparsely inhabited area, conversing with each other at about the hour of 11:30 p. m.; that the defendant, armed with a loaded shotgun, approached the rear of the car, pulled open the door on the side occupied by Mrs. Ford, the deceased being seated behind the steering wheel, and fired one shot, causing the almost instantaneous death of the deceased. He then violently caught Mrs. Ford by the wrist, dragged her out of the car into a thicket about twenty feet away, and there proceeded, under threats of killing her, to commit the alleged crime of aggravated rape. After having accomplished his lustful purpose, he returned her to the car, took her wallet, containing approximately $4, and jacket and ran from the scene, still carrying his shotgun, returning to his cabin approximately two miles away. After removing the money, he threw the wallet into high weeds, and on reaching his home hid the money under firewood in his one-room cabin, where he lived unmarried and alone, and then burned the jacket in his fireplace. The shotgun with a recently discharged empty shell was found in his cabin, together with the remnants of the plaid jacket, and the empty wallet found where thrown away.
 

 In the instant case the record conclusively reveals that though the crime of murder is charged, and upon which the trial and conviction was had, the questions propounded or statements made by the district attorney as to the crime of aggravated rape, the latter offense and the circumstances attending its commission, was a contemporaneous part of and involved every act and deed of the defendant while committing the crime of murder from its very inception to the end. All of the facts in regard to the crime of murder and that of a simultaneous aggravated rape were in unity of time and show a continuous course of conduct, making futile a segregation of one from the other. The commission of the crime charged concomitantly with that of aggravated rape, truly two distinct offenses, but so closely connected and interwoven as to time and circumstances, forming an uninterrupted series of events, brings both crimes squarely within the rule of res gestae and as such admissible. However, the trial judge, in an abundance of caution, correctly charged the jury that though the only crime charged was that of murder, evidence of every fact and circumstance in connection with the proof of that specific crime or having causal relation thereto, even should such facts disclose the commission of a separate crime, could justifiably be considered by it in determining the innocence or guilt of the defendant.
 

 We may also observe that our LSA-Revised Statutes, supra, denounces murder
 
 *708
 
 as a crime when committed in the perpetration of aggravated rape. In permitting questions and statements bearing upon the crime of murder when committed as defined above, no error can be assigned against the trial judge for having adhered to its specific provisions.
 

 The case of State v. Smith, 216 La. 1041, 45 So.2d 617, relied upon by the defense, can be readily distinguished from and has no analogy to the case at bar. In that case no evidence was produced or even contention made that the defendant had, in the commission of the crime of murder as charged, attempted to or did commit any sexual crime. In view of that fact we held that any statement or questions propounded bearing upon the commission of a sexual crime was prejudicial to the defendant. Manifestly, counsel for the defense can find little legal solace in that respect, as contra-distinguished from the issues here presented.
 

 Bill of Exception No. 4 was reserved to the opening statement of the district attorney, wherein he stated to the jury, over objection of counsel for the defense, that the defendant ravished Mrs. Lillie May Hemphill Ford, and that such a statement in the trial of the defendant for the crime of murder was improper and highly prejudicial to defendant’s constitutional rights.
 

 Under Article 333 of the Cocle of Criminal Procedure it is the mandatory duty of the district attorney to make an opening statement to the jury and in which he must explain not only the nature of the charge against the defendant, but also the evidence by which he expects to establish the charge
 
 [2]
 

 In his per curiam, the trial judge states that the district attorney, in his opening statement, read the definition of murder to the jury, particularly in connection with the perpetration of aggravated rape, LSA-R.S. 14:30, and detailed the facts which he expected to prove in connection with the crime charged, that is, murder. He further states that at the time of the objection he charged the jury that the defendant was on trial for the crime of murder and to which they must scrupulously confine themselves.
 

 In view of the conclusion reached by us on the Bills of Exception Nos. 1, 2 and 3, we find no merit to this Bill of Exception.
 

 Bill of Exception No. 5 was reserved to the court’s ruling in refusing to exclude the coroner and four deputy sheriffs from the courtroom during the trial and overruling the defendant’s motion that they be sequestered with the other witnesses, thus permitting them to testify on behalf of the State, though all other witnesses upon motion of defendant’s counsel, had been duly sequestered.
 

 
 *710
 
 Defendant contends that the court' was in error in refusing to order these named witnesses sequestered in that their presence during the trial was prejudicial to the defendant, permitting them to hear the testimony of other witnesses and then testify on behalf of the State.
 

 In his per curiam, the trial judge states that the exclusion of these witnesses from the courtroom would have left no one to guard the defendant, serve its processes, execute the orders of the court, maintain order and decorum, especially since the trial of this cause was lengthy and conducted in a crowded courtroom.
 

 The record reveals that the coroner’s testimony was confined exclusively to the wounds of the deceased and the cause of death, he having conducted a medical investigation on the body of the deceased for that purpose. The testimony of the four deputies was likewise confined to proof of a confession, or confessions, of the accused' and the circumstances attending, and in connection with, said confessions. No other evidence was elicited from them in connection with the crime charged other than the arrest of the defendant and placing him in confinement.
 

 Article 371 of the Code of Criminal Procedure provides that:
 

 “The judge may, at any stage of the trial, order the sequestration of the witnesses. As soon as such order shall have been given it shall be the duty of the sheriff to take charge'of the witnesses and to remove them to a place where they shall not be able to see or hear any of the proceedings taking place in court. Nor shall there be, while they shall be sequestered, any communication between them and others or between them and any witness who shall have testified. Any disregard of these provisions by a witness shall disqualify him from testifying and shall subject him to punishment for contempt; provided, that the judge may in all cases, in his discretion, permit any witness to testify; * *
 

 We have consistently honored the rule that the ordering or refusing to order sequestration of witnesses is within the sound discretion of a trial court, and it is only when the exercise of such a discretion is arbitrary or unreasonable, to the prejudicial injury of the defendant, in obtaining a fair and impartial trial, that we would be warranted in setting aside a verdict. State v. Daniels, 122 La. 261, 47 So. 599; State v. High, 122 La. 521, 47 So. 878; State v. Bates, 140 La. 833, 74 So. 165; State v. Hardy, 142 La. 1061, 78 So. 116; State v. Constanza, 157 La. 411, 102 So. 507.
 

 Defendant cites and relies on Article 371, Code of Criminal Procedure, supra, and State v. Carter, 206 La. 181, 19 So.2d 41.
 

 In this connection we find it most appropriate to follow the holding of this Court
 
 *712
 
 as expressed in the case of State v. Smith, 216 La. 1041, 45 So.2d 617, 619, as follows:
 

 “The trial court is vested with discretion as to what officers may be excused from the rule, and it is only when this discretion is arbitrarily and unreasonably exercised to the prejudicial injury of the defendant in obtaining a fair and impartial trial that this court would be warranted in setting aside a verdict. The essence of the Carter case was whether or not the accused shot the deputies without provocation or in self defense. The refusal of the trial judge to place these three witnesses under the rule and permitting them to remain in the court room, for all practical purposes, deprived the accused of the right to cross-examine them. The trial judge did not cite any reason for his refusal to place them under the rule but took the position that the law granted him the discretion to do so. In the present case the trial judge states that Black was necessary to maintain order in court. It does not appear that Black had any personal interest in the outcome of the case or had received injury at the hands of the accused. Under tire circumstances, we cannot say that the trial judge abused his discretion in excusing this officer from the rule.”
 

 We find no merit to this Bill of Exception, or an abuse of the discretion of the trial judge.
 

 Bill of Exception No. 6 is leveled at the court’s ruling on defendant’s objection to the coroner’s testimony as to the cause and death of the decedent. Counsel for defendant urges that since the coroner failed to hold and conduct an inquest in accordance with the provisions of LSA-R.S. 15:28, and due return made of the procés verbal thereof as prescribed by LSA-R.S. 15:35, that the defendant was deprived of having a copy of the procés verbal, the right to which is granted to him under the provisions of LSA-R.S. 15:34.
 

 LSA-R.S. 15:28 provides that the coroner, on being informed of the death of any person within the parish, shall view the body and make all proper inquiries respecting the cause or manner of death for the purpose of holding an inquest or autopsy. The following section, 15:31, provides for the action to be taken by the five citizens summoned to serve and impaneled as an investigative body or coroner’s jury. Where no inquest is held but an investigation is made by the coroner, he shall render a report thereof to the district attorney, and copy of this report shall be given to the accused or his counsel,
 
 at his request, zvithout cost.
 
 LSA-R.S. 15:34.
 

 The next section calls for the filing of the procés verbal of an inquest, which shall be considered competent evidence of death
 
 *714
 
 and the cause thereof, but not of any other fact. LSA-R.S. 15:35.
 

 We find nothing in the record, nor has the defendant referred to anything in his oral argument or written brief, showing any request by the defendant or his counsel for a copy of any report covering the im vestigation of the coroner in lieu of his failure to have held an inquest. In his per curiam, the trial judge states that he permitted the coroner, Dr. Ricks, who had held that position for more than twenty years, to testify to the facts which his personal examination of the deceased disclosed; that he considered the testimony of the coroner the best evidence as to the death and cause of death of the deceased, this examination and his medical findings having been made immediately after the wounds had proven fatal.
 

 We find no error in this ruling or any prejudice occasioned the defendant. Manifestly, had the coroner submitted a procés verbal as a result of an inquest, it would have been competent evidence only as to proof of death and the cause thereof, and no other fact. It is equally true that the coroner’s testimony, subject to the defendant’s right of cross-examination, could serve no other purpose than that which a procés verbal could prove; and the findings of the coroner by medical diagnosis are duly sanctioned by the statute, supra. It is significant that at no time prior to or during the trial did the defendant request a copy of any report made by the coroner as a result of his personal investigation, and he cannot now be heard to complain. The corpus delicti is solely one of fact, the proof of which is essential in all capital crimes, and we cannot hold that the ruling of the trial judge in that respect was prejudicial.
 

 Bills of Exception Nos. 7 and 8 were reserved to the ruling of the trial judge in admitting in evidence six photographs, three of which purported to be an enactment of the crime charged ánd a graphic view of the scene of the crime and the defendant’s there assumed positions reenacting its commission. The other three photographs are of the corpse of the deceased taken while exposed in a funeral home.
 

 The defendant contends that the three photographs taken at the scene were not offered for the purpose of proving any specific material fact but solely to portray the actions of the defendant in re-enacting the crime charged, and therefore constitutes prejudicial error. A close scrutiny of these three photographs reveals that the one identified as “State Exhibit No. 1” merely shows the accused standing with six deputies and officers of the court, near a car parked on a gravel road in a wooded area. The photographer identified this exhibit as having been taken after the defendant had re-enacted the alleged crime, and it does not portray any action whatever by the accused in connection with the crime, other than a posed photograph. The photograph
 
 *716
 
 identified as “State Exhibit No. 2 ” shows the accused in the act of walking toward the rear of the car in which the deceased and Mrs. Ford were seated. The photograph identified as “State Exhibit No. 3” shows -the accused with both hands on the handle of the right door of a car, partly open, looking over his left shoulder at the photographer.
 

 In the per curiam of the trial judge, he states that Bill of Exception No. 7 was reserved while the jury was retired so as to first determine the admissibility of said photographs. Bill of Exception No. 8 was reserved after the jury had returned into the courtroom and the exhibits tendered in evidence. He further states that the three photographs of the deceased, taken in the funeral home, were not “too gruesome” and cites cases in support thereof; that the three photographs made at the scene of the crime charged were admissible, having been taken shortly after the oral confession of the defendant, and in corroboration thereof.
 

 In this modern era it has been universally recognized that courts must take judicial cognizance that all civilized communities must perforce rely on photographic pictures in presenting inanimate, natural and physical objects and resemblances of persons. Of necessity, their accuracy and authenticity must, as a condition precedent to their admissibility, be satisfactorily established. In determining their admissibility, proper inquiry should be made to ascertain whether such evidence would clarify some material issue and would afford the court and the jury a clearer comprehension of existing physical facts and throw greater light and more accurate appreciation of the weight, if any, to be given the oral testimony. Manifestly, where photographs are irrelevant or immaterial, would confuse, or mislead, rather than be helpful, distract the tribunal’s attention to other than main issues, or where the natural effect of their introduction in evidence would arouse the sympathies or prejudices, rather than throw helpful light, such evidence should be promptly excluded.
 

 It is equally recognized that photographs may be admitted as secondary evidence of objects which for some reason or other cannot be produced in court or where they become demonstrative evidence. It must be conceded that a photograph, standing alone, for evidential purposes can be generally deemed a testimonial non-entity unless offered to show inanimate things speaking for themselves. It can of itself tell no more of the existence of a thing portrayed without a human being’s credit to support it. It must aid in someone’s testimony or it is nothing other than what it visualizes mutely. Courts have generally recognized these fundamentals on the theory that they are pictorial communications of a qualified witness in addition to or in aid of throwing light on parole evidence and thereby afford a more enlightened determination of the facts upon which conclusions are to
 
 *718
 
 be drawn. Photographs as evidence-áre but a corollary to that of permitting the introduction of physical objects themselves. On the same grounds and for.the same purposes are the admissibility of diagrams, maps and drawings of objects or places.
 

 At the trial, the photographer testified to the accuracy and authenticity of these photographs. The record further reveals by the testimony of the state police and parish officers that immediately following the oral confession of the defendant, wherein he minutely described all of the facts and circumstances preceding, at the time of, and following the commission of the crime charged, the photographer was called in, and with the voluntary willingness of the defendant, they went to the scene. On their arrival, the defendant orally pointed out the position of the car when he opened the door, and this was reproduced. The defendant then proceeded to demonstrate the manner in which he approached the car from the rear, walking along a ditch skirted by thickets, and as he proceeded to demonstrate this fact, photograph “State Exhibit No. 2” was taken. The defendant then proceeded to demonstrate the manner in which he jerked open the right door, placing his hands on the door handle, and the position he was standing in when he fired the fatal shot. In that position photograph “State Exhibit No. 3” was taken. Reference has been made to photograph “State Exhibit No. 1”.
 

 ' It is significant that the defendant went to the scene of the crime where these photographs were taken, voluntarily and without protest. There is no denial of that fact. There is no proof or suggestion that the defendant was promised, induced, or coerced in any manner to enact the facts surrounding the crime. Manifestly, ' the words and actions of the defendant in dei scribing how and in what manner he had committed the crime charged was a recapitulation of his oral confession of an hour previous and can be correctly ■ held to be a second and separate confession! The photographs taken alone, in connection with the demonstrated actions of the defendant, with his voluntary statements, were also nothing less than a pictured confession, the admissibility of which is approvingly received by a great majority of our states.
 
 [3]
 
 The testimony of the officers explaining these photographs and what transpired at that time, is not to be considered irrefutable proof of what in fact occurred, but as an illustration by the defendant himself in proof of his motive and intent.
 

 Let us assume that had the statements and actions of the defendant at the scene of the crime been made in the presence of these officers without the use of photography, can it be said that the proffered testimony of these officers detailing these facts at the trial would be inadmissible? We readily think not. In the case of State
 
 *720
 
 v. Johnson, supra, we said [198 La. 195, 3 So.2d 559]:
 

 “The admission of photographs and the use to be made of them on the trial must necessarily rest largely within the discretion of the trial judge, who can determine whether they serve a proper purpose in the jury’s enlightenment. Wharton, Criminal Evidence, 11th Ed., Vol. 2, sec. 773, p. 1323. Photographs, whether original or copies, are admissible as primary evidence upon the same grounds and for the same purposes as are diagrams, maps and drawings of objects or places. Generally, photographs which go to illustrate any fact or shed light on an issue, or are relevant to describe person, place or thing involved, are admissible. They may be used by witnesses in explaining their testimony, and in illustrating hypothetical situations. Admission and use of photographs are much within the discretion of the court, and it is proper practice for the judge to hear preliminary evidence on the matter. Photographs have been received for the purpose of describing and identifying premises which were the scene of a crime, and they need not show all the premises if they show the material part. Under-hill’s Criminal Evidence, 4th Ed., sec. 117, pp. 157 and 158.” •
 

 We also said:
 

 “Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible.”
 
 [4]
 

 The Supreme Court of Pennsylvania in the case of Commonwealth v. Carelli, 1925, 281 Pa. 602, 127 A. 305, 306, held:
 

 “* * * Objections made to the admission of photographs of the saloon where the murder was perpetrated, on the ground that they were taken nearly a month after the date of the crime, must necessarily fall, because they were
 
 taken when the defendant and his fellow criminals were themselves showing how the crime was
 
 committed, in order that the photographer should get an exact reproduction of the saloon, and of the location of the parties in it, at the date of the murder. * * * ”
 

 (Italics ours.)
 

 Also see Viliborghi v. State, 45 Ariz. 275, 43 P.2d 210.
 

 The other photographs, identified as “State Exhibit Nos. 4, 5 and 6” are objected
 
 *722
 
 to on the ground that they are gruesome. These three photographs of the corpse of the deceased do not portray a scene so revolting and abhorent in gruesomeness as would incite the emotions and passions of the jury against the defendant. They show the deceased, fully covered with a sheet except for his face, upper shoulders, chest and upper right arm and the location of the bullet wound on his upper right arm and his mouth. We concede that all photographs of violent death are certainly not elegant, pleasant, gratifying or alluring. Crimes of violence in themselves arouse moments of horror and repulsion, but that, in itself, should not mean that photographs depicting violence should be excluded, and even though they are merely corroborative or cumulative evidence.
 

 These three photographs of the deceased were likewise proved to-be accurate and authentic, and even though the coroner had testified as to the location, nature and effect of the wounds on the body of the deceased, they merely corroborate his testimony, become admissible in further proof of the corpus delicti, an essential in our law.
 

 As we said in the case of State v. Morgan, 211 La. 572, 30 So.2d 434, 438, quoting from Scott on Photographic Evidence, sec. 661, p. 577:
 

 “ ‘A
 
 photograph of the wounds of the victim of a crime may be prejudicial because of its gruesome appearance, but nevertheless it is admissible when material to some issue in the case and when properly verified; if the rule were otherwise, the more horrible a crime the more hampered would be the prosecution of those who had contributed to the details of its horror. «{s * * > »
 

 We conclude that the trial judge did not abuse his discretion in admitting the photographs complained of.
 

 Bill of Exception No. 9 was reserved to the ruling of the trial judge admitting in evidence the written confession of the accused made by the defendant on the evening of the same day that he was arrested, the crime charged having been allegedly committed on the night previous, which confession the accused contends was not freely and voluntarily made. He contends that the signing of this confession by him in the presence of fifteen witnesses was done under fear and great emotional strain to which he had been subjected. He challenges the confession on the ground that its contents are not only relative to the crime of murder, but to a statement allegedly made by him to the commission of the crime of aggravated rape, and that the trial court allowed it to be read by each individual member of the jury.
 

 In his per curiam, the trial judge observes that it was made in the presence of officers as well as a number of witnesses of the defendant’s own race, recorded and transcribed by a stenographer, and duly-
 
 *724
 
 signed by the defendant as his free and voluntary act, in the presence of these attesting witnesses, and says:
 

 “In the court’s opinion, the confession was a free and voluntary act and made by the defendant after he had been thoroughly examined by Dr. J. H. McClendon, a physician other than the coroner, in the presence of these witnesses as shown by the testimony of Dr. J. H. McClendon.”
 

 In the case of State v. Richard, 223 La. 674, 66 So.2d 589, 590, wherein we disposed of'an identical bill, we therein restated our fundamental law regarding the admissibility of confessions in the following language:
 

 “It is well settled in the law of this state that, before a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducement, or promises.”
 

 In the case of State v. Cook, 215 La. 163, 39 So.2d 898, 901, wherein we reviewed many authorities, we said, quoting:
 

 “ ‘The question of the admissibility of a confession is for the judge, ■its effect for the jury’ * * * and ‘whether a sufficient basis was laid for ■the admission of an alleged voluntary confession is a question of fact upon which the ruling of the trial judge will1 not be disturbed unless clearly against the preponderance of the evidence.’ ”
 
 [5]
 

 An examination of the testimony of the witnesses disclosing the facts and circumstances attending the making and receiving of the confession, firmly convinces that it was freely and voluntarily made and its acceptance duly preceded by a full compliance with all required proof of its admissibility.
 

 The record reveals that immediately after the arrest of the defendant on the early morning following the crime, defendant was placed in the parish jail. At about the hour of 11:30 that morning he was taken to the sheriff’s office, and after being questioned by a member of the state police and a deputy, during the interval of a half hour, the defendant gave a full oral confession of the crime charged and also that of aggravated rape. He was then taken to the scene of the crime, and, as stated above, again detailed and demonstrated all of the facts of his oral confession. While returning, they stopped at the .defendant’s cabin, and he then proceeded to describe the place where the wallet of Mrs. Ford could be found, pointed out where he had hidden the money removed therefrom and the fireplace in which he had burned Mrs. Ford’s jacket. Mr. Peavey, his employer, who was observing these disclosures, asked the defendant who had committed such a crime, to which
 
 *726
 
 he promptly" replied,'"I did.” At about the hour of 7:30 that evening, after twelve members of his own race had been requested by the officers to be present, the defendant was brought to the sheriff’s office and there freely and voluntarily, in the presence of these twelve and three other subscribing witnesses, orally dictated his confession to a stenographer who reduced it to writing. It was twice read to the defendant, and he readily signed it, together with the fifteen subscribing witnesses.
 

 Though the defendant testified that he had been subjected to some measure of ill-treatment by one officer, we find the testimony of all the officers who received the oral and written confessions and who had accompanied him to the scene of the crime and to the farm of defendant’s employer positively denying having ever exposed or subjected him to ill treatment by any act or conduct on their part, or that of others present; and all. confessions, oral, demonstrated and pictured, were freely and voluntarily made. The fact that on these occasions the defendant was in the presence of numerous officers cannot be construed, in the absence of prejudicial facts, to constitute, vel non, any intimidation, fear, duress, or inducement.
 

 We conclude that the written confession was freely and voluntarily made and that the ruling of the trial judge will not be disturbed.
 

 Bills of Exception Nos. 10 and 11 relate to the testimony of a state witness, Mrs. Ford, and the ruling of the trial judge in permitting her to testify on direct examination to the commission, by the defendant, of the crime of aggravated rape while being tried for the crime of murder.
 

 The trial judge, in his per curiam, ruled that such evidence formed part of the res gestae and was admissible.
 

 The contentions urged in these two bills have been fully considered by us in reviewing Bills of Exception Nos. 1, 2, 3 and -4, and the reasons we have assigned therein are conclusive of this contention.
 

 We find no error in the trial judge’s ruling.
 

 Bill of Exception No. 12 is leveled at the ruling of the trial judge denying the defendant’s motion for a new trial. This motion is based on the errors complained of in the various bills of exception which we have fully considered and disposed of.
 

 Defendant also urges that the verdict of the jury is contrary to the law and the evidence.
 

 This contention is no more than a plea that the evidence was insufficient to convict the defendant, and assignment of error that is unavailing in this court.
 
 [6]
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . Yol. 2 Marr’s Criminal Jurisprudence of Louisiana, 2nd Ed., 868, Sec. 565; State v. Guillory, 201 La. 52, 9 So.2d 450.
 

 [2]
 

 . State v. Johnson, 198 La. 195, 3 So.2d 556.
 

 [3]
 

 . Scott, Photographic Evidence, Chap. 19, Sec. 6920, and authorities therein cited.
 

 [4]
 

 . Wharton’s Criminal Evidence, 11th Ed., Yol. 2, sec. 773, p. 1321; State v. Messer, 194 La. 238, 193 So. 633; State v. McMullan, 223 La. 629, 66 So. 574; Pollack v. State, 215 Wis. 200, 253 N.W. 560, 254 N.W. 471.
 

 [5]
 

 . State v. Bessa, 115 La. 259, 38 So. 985; State v. Collens, 37 La.App. 607; State v. Woods, 124 La. 738, 50 So. 671.
 

 [6]
 

 . State v. Matassa, 222 La. 363, 62 So.2d 609; State v. Di Vincenti, 225 La. 689, 73 So.2d 806.